**Billy Mack WALKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38877.**

Court of Criminal Appeals of Texas.

Jan. 5, 1966.

Norman Kinne, Mike Barclay, Dallas, for appellant.

Henry Wade, Dist. Atty., Jim Miller, Jim Zimmermann and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is burglary; the punishment, twelve years confinement in the Texas Department of Corrections.

The facts in this case are virtually the same as those in Anderson v. State, Tex.Cr. App., 391 S.W.2d 54.

State's witness, W. J. Cooper, testified that he owned Cooper's Grocery Store in the City of Garland, Texas. The witness testified that this grocery store is a business house consisting of four walls, a ceiling, and capable of being locked, and that on June 19, 1964, the contents of said business house were his corporeal personal property; that he owned and occupied said business house, and that he did not give anyone permission to break into this store or to take anything therefrom. Mr. Cooper testified that among the things in his store was a safe, and that about 7:00 a. m. on the morning of June 20, 1964, he went to said store and found that there was a hole in the ceiling of said store and that the safe had been removed. Subsequently, Mr. Cooper went to the Garland Police Station where he saw and identified the safe that had been taken from his grocery store. Mr. Cooper testified that said safe contained around $6,058.00 in United States currency and that the knob to the safe had been knocked off.

The State called Gerald D. Husketch, Garland Police Department, who testified that at about 3:45 a. m., June 20, 1964, he was on routine patrol going North on Shiloh Road; that he had occasion to notice a car traveling South on Shiloh Road that had stopped and turned around and went back North on Shiloh with its lights off. He testified that he followed the car North on Shiloh to Beltline Road where the car turned onto Beltline; the car's lights were turned on before reaching the intersection of Beltline Road, and the car had

traveled approximately one fourth of a mile with its lights off. Officer Husketch testified that he signaled the car to stop with his red lights on Beltline Road, about 300 feet East of Jupiter Road. The record reveals that Officer Husketch stopped his vehicle behind the suspect car. At the time when Officer Husketch saw the car turn left on Beltline Road, he noticed two people in said car. The record reflects that after said vehicle was stopped, the driver-appellant got out and came back between the two vehicles where, upon Officer Husketch's request, he handed Officer Husketch his driver's license, which identified him. After examining the driver's license, Officer Husketch walked up to the suspect vehicle and shined his flashlight inside the car and observed a white male lying in the back seat of the vehicle. He also observed a brown satchel on the back floorboard with two prybars protruding therefrom, and another white male lying in the front seat of said suspect vehicle. Officer Husketch testified that he saw two walkie-talkie radios underneath the subject seated in the back of the car. Officer Husketch then had the two passengers in the car get out, whereupon he searched the person of appellant and the two passengers for weapons. In such search, Officer Husketch found a padlock and a set of keys on the person of Jackie F. Anderson. Shortly thereafter, more police units arrived at the scene, and a complete search was made of the vehicle.

Officer Husketch testified that at the time when the appellant first got out of the car and presented his driver's license that appellant was not free to go at that time, hence, technically was under arrest. Officer Husketch further testified that he stopped appellant's automobile for driving without headlights. After the arrival of the other police units, the complete search revealed a floor safe located in the left rear floorboard of the vehicle, covered over with a coat; a Smith & Wesson revolver, a brown briefcase, a .38 caliber pistol was found under the left front seat, and the officers also found some dynamite blasting caps under the right front seat of the car. A 1964 license plate was found under the left front seat of the vehicle. The brown satchel bag was found to contain an electric drill, a brace, flashlight, brace and bit, vice grip pliers, chisels, two prybars, a screwdriver, drill bits, another screwdriver, and wire cutters.

Appellant was identified as the man that Officer Husketch saw driving the car.

Appellant and the other two subjects were subsequently taken to the Garland Police Station.

Officer Husketch stated he gave the operator of said suspect vehicle a traffic ticket for operating said vehicle without lights.

■ We find the evidence sufficient to sustain the jury's verdict.

No exceptions nor objections were taken to the Court's charge.

There are no formal bills of exception.

■ Appellant brings forward by numerous informal bills of exception his objections to various questions asked concerning the search of the automobile and the persons of appellant and his companions. Briefly stated, appellant predicates his appeal upon the premise that the search of the automobile which the appellant was driving and the seizure of property found in such search, was illegal and in violation of appellant's rights under the Constitutions of the United States and the State of Texas. Appellant narrows his contention down to the case at bar and contends that the police authorities in this or any other state have no right to search an automobile solely as a search incidental only to an arrest for a traffic violation, such as driving without headlights.

Appellant cites and relies upon the case of Pruitt v. State, Tex.Cr.App., 389 S.W. 2d 475, a case authored by the writer. In that case Pruitt was stopped by a patrolman

to check his driver's license. The driver's license presented by Pruitt was valid. We said there: "A licensee is not under arrest during this examination period. It is only when he is without a valid license in his possession that he becomes a law-violator." We held that the finding of a valid driver's license "terminated the patrolman's responsibility in this matter." Pruitt was not arrested for any traffic violation, and the ensuing search was held to be illegal and not the incident of a lawful arrest.

Another distinguishing point is that Pruitt was doing nothing to attract the attention of the arresting officer, while here we have a case of an officer on routine patrol in a sparsely settled area who met an oncoming automobile which, at a point where the patrol car was or could be recognized as such, abruptly halted, turned around, cut off its lights and proceeded without lights in the direction from whence it came. The circumstances were sufficiently suspicious to require the officer to make inquiry. Anderson v. State, Tex.Cr. App., 391 S.W.2d 54 and cases there cited. Pruitt does not support appellant's position.

We commend counsel for their diligence.

Finding no reversible error, the judgment is affirmed.