STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MARVIN BOYKINS, DEFENDANT-RESPONDENT.

Argued May 24, 1967—Decided July 20, 1967.

*Mr. Richard B. McGlynn,* Assistant County Prosecutor, argued the cause for appellant (*Mr. George A. Franconero,* Assistant County Prosecutor, on the brief; *Mr. Brendan T. Byrne,* Essex County Prosecutor, attorney.). .

*Mr. William P. Ries* argued the cause for respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant, indicted for possession of a narcotic drug, obtained a pretrial order suppressing evidence obtained by a search of an automobile in which he was a passenger. The Appellate Division granted leave to appeal and affirmed the order. We granted the State's petition for certification. 48 *N. J.* 448 (1967).

At 8:45 P. M. on September 14, 1965 two detectives in plain clothes, riding in an unmarked car, saw an automobile with four men, of whom defendant was one, proceeding along Bergen Street in the City of Newark at a high speed and in a reckless manner. Because of a red light defendant's car stopped 50 to 75 feet short of the intersection of Bergen Street with 18th Avenue. The detectives drew up on the left, identified themselves as police officers, and directed the driver to pull to the curb. The driver said he would, but when the light changed, "he took off with his wheels screeching," swerving toward the police car in an effort to hit it, and then made a right turn into 18th Avenue. The police car had to be pulled sharply to the left to avoid the collision. The officers took up the chase at speeds in excess of 60 miles per hour. The police siren was turned on and shots were fired in the air and then at the car to disable it. Defendant's car narrowly missed two pedestrians, who had to climb a parked automobile "like a squirrel climbing a tree." The car turned into Jelliff Avenue "on two wheels * * * managed to right itself and then came to a sudden stop" on the wrong side of the street, at the Waverly Freight Yards. Defendant, who was in a rear seat, and two others fled from the car, and stopped only after warning shots were fired. Other police cars, summoned during the chase, converged on the scene within a minute. Defendant became violent; it took four officers to confine him to a police car.

The fourth occupant of defendant's car, a passenger in the front, was dead at the scene. We gather that it was later determined that he had been hit by a bullet fired by the pursuing officers. The officers did not suggest they thought

they were dealing with a homicide, and hence we will not consider that circumstance in deciding the issue before us. At the same time, it is irrelevant whether the shooting was warranted, and of course that matter was not tried.

Defendant and the others were searched on the spot. The search of defendant revealed nothing, and we gather that the search of the other men also produced no evidence of criminal involvement. But a search of the car, made at the scene while defendant and his companions were still there, revealed an open knife under the front seat on the driver's side and a brown manila envelope on the floor on the passenger's side. The envelope contained marijuana.

In granting the motion to suppress the trial court discounted the claim that the driver of the fleeing car tried to commit an assault and battery in swerving toward the officers' car. The trial court then found that although the testimony warranted an arrest for speeding, *N. J. S. A.* 39 :4–98; reckless driving, *N. J. S. A.* 39 :4–96; or careless driving, *N. J. S. A.* 39 :4–97, an arrest for such traffic violations would not justify the search of the automobile. The trial court relied upon *State v. Scanlon,* 84 *N. J. Super.* 427 (*App. Div.* 1964), which held that an arrest for a broken taillight and for failure of the operator to have his driver's license with him, would not support a search of the vehicle.

█ Noting that a search could be made as an incident to an arrest if reasonably necessary to protect the arresting officer from attack, to prevent escape, or to prevent destruction of evidence (84 *N. J. Super.,* at *pp.* 434–435), the trial court found no basis for the search in the present case because the occupants were no longer in the car and in fact were securely handcuffed by the time the vehicle was searched, even though the time interval was no more than minutes. And while apparently recognizing that the behavior of the defendant and his companions was strongly suggestive of involvement in crime, the trial court emphasized that the State was not able to point to any specific criminal event, known to the officers at the time of arrest. On that ground the trial court held

inapplicable our decision in *State v. Fioravanti*, 46 *N. J.* 109 (1965), *certiorari* denied 384 *U. S.* 919, 86 *S. Ct.* 1365, 16 *L. Ed. 2d* 440 (1966).

The Appellate Division affirmed on the basis of the trial court's opinion.

Surely not every traffic violation will justify a search of every part of the vehicle. See, generally, annotation, 10 *A. L. R. 3d* 314 (1966). A traffic violation as such will justify a search for things related to it. So, for example, if the operator is unable to produce proof of registration, the officer may search the car for evidence of ownership, *People v. Prochnau*, 59 *Cal. Rptr.* 265 (*Ct. App.* 1967); *Draper v. State of Maryland*, 265 *F. Supp.* 718 (*D. Md.* 1967); or if the officer has reason to believe the driver is under the influence of liquor or drugs, he may search the car for alcohol or narcotics, *State v. Parker*, 81 *Idaho* 51, 336 *P. 2d* 318 (*Sup. Ct.* 1959); *People v. Jackson*, 241 *Cal. App. 2d* 189, 50 *Cal. Rptr.* 437 (*Dist. Ct. App.* 1966). The State argues before us that the search here made could be justified on the latter ground. It could, if the officer had testified that the driver's behavior or condition had suggested he was under such influence but the record is silent in that regard.

If an officer decides to take a traffic violator into custody rather than to issue a summons, he may search the occupants and the car for weapons if he reasonably believes it necessary for his own protection or to prevent an escape. As noted above, the trial court rejected that basis for a search, saying that once the driver and his companions were securely handcuffed outside the car, there was no danger of injury to the officers or of escape. We assume the trial court found as well that the officers had already made a final decision not to transport the prisoners in defendant's car and that hence there was no need to search the automobile for weapons in connection with such use of it.

We need not pass upon the issue that limited context would raise, because the search was valid upon another basis. The facts recited above plainly suggest the driver and his pas-

sengers or one or more of them were involved in some substantial criminal affair. Ordinary men do not run the risks they ran to avoid a traffic ticket. There is no reason to suppose the driver doubted the detectives were in fact officers of the law. He acknowledged the order to pull to the curb and said he would. He was not in a desolate locale. On the contrary the scene was a populated area of a large city. Such behavior strongly suggests a probability that the occupants had on their persons or in the car contraband or instruments or the fruit of crime. It seems to us that in such circumstances the public interest requires that the men and the vehicle be searched even though at that stage the officers know of no specific offense, other than a traffic violation, upon which an arrest could be made.

The Fourth Amendment forbids only such searches as are unreasonable. The familiar doctrine that a search may be made as an incident to an arrest does not exhaust the subject of reasonable searches without a warrant. Rather it represents merely a category of reasonable searches. See *People v. Webb,* 56 *Cal. Rptr.* 902, 424 *P. 2d* 342 (*Sup. Ct.* 1967). This is made plain in *Cooper v. State of California,* 386 *U. S.* 58, 87 *S. Ct.* 788, 17 *L. Ed. 2d* 730 (1967). There a search was made a week after the vehicle had been seized in connection with a narcotics violation. It was argued on the basis of *Preston v. United States,* 376 *U. S.* 364, 84 *S. Ct.* 881, 11 *L. Ed. 2d* 777 (1964), that the search could not be deemed an incident of the arrest because it was not made at the time of the arrest. The Supreme Court said that *Preston* did not hold that a search without a warrant can be reasonable only if it is made as an incident to an arrest. It pointed out that in *Preston* the search was sought to be sustained solely upon that basis, and that that effort failed because (1) the offense for which the defendant was there arrested was vagrancy and since there could not be an instrument, fruit, or evidence of that offense in the vehicle, there could not be a search upon that premise, and (2) insofar as the protection of the arresting officers and prevention

of an escape are concerned, there was no need for a search long after the defendant was jailed. Stressing that *Preston* held no more and did not say that to be reasonable a search without a warrant must be connected with an arrest, the Court proceeded to consider whether the basis asserted for the search in the case before it repelled a charge of unreasonableness. The Court could see nothing unreasonable in searching a car which the police held in custody as evidence in connection with a forfeiture proceeding, say "It would be unreasonable to hold that the police, having to retain the car in their garage for such a length of time, had no right, even for their own protection, to search it" (386 *U. S.* at 61, 87 *S. Ct.* at 791, 17 *L. Ed. 2d* at 733).[1]

In *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1924), it was contended that the officers could not arrest the driver because the driver's offense constituted a mere misdemeanor which in the circumstances would not support an arrest except upon an arrest warrant, from which proposition the defendant urged it had to follow that a search of the car without a search warrant was invalid. In rejecting that proposition, the Court said (267 *U. S.,* at *pp.* 158–159, 45 *S. Ct.,* at *p.* 287, 69 *L. Ed.,* at *pp.* 553–554) :

"* * * The argument of defendants is based on the theory that the seizure in this case can only be thus justified. If their theory were sound, their conclusion would be. The validity of the seizure then would turn wholly on the validity of the arrest without a seizure. But the theory is unsound. The right to search and the

[1] The State does not urge, and we do not consider other possible bases for the search : (1) There was testimony that every vehicle had to be searched before being towed in, thus suggesting the existence of an administrative regulation, to protect the contents of the vehicle by appropriate security and as well to protect the city against unfounded claims that something of value disappeared after the car was taken by the police. Agata, "Searches and Seizures Incident to Traffic Violations," 7 *St Louis Univ. L. J.* 1, 28–30 (1962) ; *People v. Baker,* 135 *Cal. App. 2d* 1, 286 *P. 2d* 510 (*Dist. Ct. App.* 1955) ; *State v. Olsen,* 43 *Wash. 2d* 726, 263 *P. 2d* 824 (*Sup. Ct.* 1953) ; *cf. Williams v. United States,* 170 *A. 2d* 233 (*Mun. Ct. App. D. C.* 1961). (2) The flight of the passengers from the vehicle could suggest it was not theirs and that they abandoned possession.

validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law. The seizure in such a proceeding comes before the arrest as section 26 [of the statute there involved] indicates."

So in *Husty v. United States,* 282 *U. S.* 694, 700, 51 *S. Ct.* 240, 241, 75 *L. Ed.* 629, 632 (1931), the court repeated that "The Fourth Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search."

In *Henry v. United States,* 361 *U. S.* 98, 80 *S. Ct.* 168, 4 *L. Ed. 2d* 134 (1959), the officers investigating a theft of liquor from an interstate shipment searched a truck and seized stolen radios. There was no probable cause for an arrest. As to the search, the majority found no cause to believe the truck held stolen goods, saying (361 *U. S.,* at *pp.* 103–104, 80 *S. Ct.,* at *p.* 172, 4 *L. Ed. 2d,* at *p.* 139) :

"* * * Riding in the car, stopping in an alley, picking up packages, driving away—these were all acts that were outwardly innocent. Their movements in the car had no mark of fleeing men or men acting furtively. The case might be different if the packages had been taken from a terminal or from an interstate trucking platform. But they were not. As we have said, the alley where the packages were picked up was in a residential section."

Thus it was recognized that suspicious behavior of the occupants of a vehicle may give good cause to search it.

In the case before us, the extraordinary behavior of the driver and his passengers generated an irresistible suspicion that there was something illicit upon them or in the car. There was accordingly ample basis for the search unless the Constitution requires that the officers know of some specific criminal event to which the search can be related. In considering whether knowledge of a specific criminal act is indispensable, it should be kept in mind that if such knowledge and a purpose to seize something specific related to such an

event are required, the deficiency will bar as well a search under a warrant since the Fourth Amendment requires as to a warrant that the "things to be seized" shall be particularly described. The question then is not whether the obvious public interest in such a setting shall be protected by search under a warrant but whether the public interest can be protected at all.

We must recur to the basic proposition that the Fourth Amendment bars only searches that are unreasonable. "Since the Fourth Amendment speaks, not in terms that are absolute, but rather of unreasonableness, it necessarily calls for a continuing reconciliation of competing values. Pre-eminent in the galaxy of values is the right of the individual to live free from criminal attack in his home, his work, and the streets." *State v. Davis,* 50 *N. J.* 16 (1967). That primary individual right demands that government be equal to the reason for its being—the protection of the individual citizen, and in deciding whether a search is unreasonable if the officer does not know precisely what it will uncover, we must keep in mind that the police have a preventive role as well as the duty to deal with crimes already committed. *State v. Dilley,* 49 *N. J.* 460 (1967). And finally it is worth repeating that the immediate question is whether evidence of unimpeachable probative worth shall be suppressed with the obvious hurt to other individuals and to public values involved, not because the Fourth Amendment says that evidence illegally obtained shall not be used, but rather because the judiciary, believing it was unable to fashion a remedy for its breach, settled upon the sanction of suppression to compel obedience to its command. *State v. Davis, supra,* 50 *N. J.,* at 22.

Here we are not dealing with the privacy of a home, or of a place of business. We are not dealing with something which is immobile and is thereby limited in its usefulness to the criminal element. Rather the subject is a motor vehicle, which, for all its blessings, is high among the agencies of crime. The automobile is perfectly suited for that use.

It provides cover for weapons, contraband, and the fruits of crime. It supplies a capacity to strike without warning and to leave without trace. No discussion of crime can ignore the automobile, or the fact that the incidence of crime is hinged directly to the amount of privacy we accord it.

The States remain free, and obliged, to devise "workable rules" of search and seizure to meet "the practical demands of effective criminal investigation and law enforcement." *Ker v. State of California*, 374 *U. S.* 23, 34, 83 *S. Ct.* 1623, 1630, 10 *L. Ed. 2d* 726, 738 (1963). In *Brinegar v. United States*, 338 *U. S.* 160, 176, 69 *S. Ct.* 1302, 1311, 93 *L. Ed.* 1879, 1891 1949), which involved a search of an automobile, the Court stressed that probable cause is "a practical, nontechnical conception" and that,

"* * * Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

█ With these values in view, we have no difficulty in sustaining the search upon the basis of the conduct we have described. We see no trace of the general warrant. The place to be searched is specific and small — an automobile; and although the officers may have no precise reason to expect to find the product of a specific crime, it is reasonable to suspect at least the presence of a weapon. The weapon is so routinely an instrument of crimes of force or violence with which the automobile is closely identified that conduct which affords a well-grounded suspicion of some criminal involvement on the part of the occupant of a car supports also a well-grounded suspicion that a search of the vehicle will yield a weapon. To require more would, in the words of *Brinegar, supra,* "unduly hamper law enforcement," and surely it cannot be said that a search of a vehicle upon such a showing would "leave law-abiding citizens at the mercy of the officers' whim or caprice." We see nothing unreasonable about a search of an automobile in such circumstances. We see no threat to the privacy of the law-abiding citizen. Rather

we see a much needed assurance for the primary right of the individual to be protected from criminal attack.

Although inevitably no two cases are identical twins, the following decisions are fairly read to agree with these views: *People v. Martin,* 46 *Cal. 2d* 106, 293 *P. 2d* 52 (*Sup. Ct.* 1956); *People v. Shapiro,* 213 *Cal. App. 2d* 618, 28 *Cal. Rptr.* 907 (*Dist. Ct. App.* 1963); *Gispert v. Florida,* 118 *So. 2d* 596 (*Fla. Dist. Ct. App.* 1960); *Braxton v. State,* 234 *Md.* 1, 197 *A. 2d* 841, 844 (*Ct. App.* 1964); *People v. Gonzales,* 356 *Mich.* 247, 97 *N. W. 2d* 16, 20 (*Sup. Ct.* 1959) (dictum); *People ex rel. Winkle v. Bannan,* 372 *Mich.* 292, 125 *N. W. 2d* 875 (*Sup. Ct.* 1964); *State v. Harris,* 265 *Minn.* 260, 121 *N. W. 2d* 327 (*Sup. Ct.* 1963); *Walker v. State,* 397 *S. W. 2d* 432 (*Tex. Cr. App.* 1965), *cert.* denied 385 *U. S.* 864, 87 *S. Ct.* 122, 17 *L. Ed. 2d* 91 (1966); *State v. Brindley,* 25 *Conn. Sup.* 216, 200 *A. 2d* 247 (1963); *Travers v. United States,* 144 *A. 2d* 889 (*D. C. Mun. App.* 1958) (dictum).

The judgment of the Appellate Division is reversed and the order of suppression in the trial court is set aside.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.