145 N.J. Super. 480 (1976)
368 A.2d 388
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOSEPH VINCENT SLOCKBOWER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1976.
Decided December 13, 1976.
*482 Before Judges HALPERN, ALLCORN and BOTTER.
Mr. Lawrence H. Posner, Assistant Prosecutor, argued the cause for appellant (Mr. James T. O'Halloran, Hudson County Prosecutor, attorney).
Mr. Jon P. Campbell argued the cause for respondent (Mr. Eric A. Summerville, Director, Patrick House Legal Clinic, attorney).
PER CURIAM.
By our leave granted, the State appeals from an interlocutory order suppressing evidence seized by the police without a warrant from an automobile driven by defendant. The uncontroverted proofs offered by the State at the suppression motion  defendant did not testify  revealed the following facts:
On March 13, 1975, at about 12:30 P.M., Detectives Frank Roth and Phillip Koscielecki, of the Jersey City Police Department, stopped and arrested defendant while he was driving on a street in Jersey City. Admittedly, there was an outstanding arrest warrant against defendant, issued January *483 9, 1975, for driving while on the revoked list. After arresting defendant and removing him from the car he was driving and which was owned by his wife, the detectives, in accordance with their established standard police procedure, impounded the car, intending to drive it to police headquarters. While inventorying the car's contents at the scene of arrest in his presence, the police found a loaded .22-calibre pen gun in the unlocked glove compartment. After a more complete inventory was made at police headquarters, and after a standard impounding sheet was completed and signed by the officers, the car was removed to a pound. We pause here to say that the validity of the inventory or search did not depend on whether it was made at the scene or at police headquarters. See Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).
Based upon the above undisputed facts, the trial judge suppressed the seizure of the gun because he found, among other things, the impoundment not to be normal police procedure and, in any event, it did not occur prior to the search of the glove compartment.[1] In addition, he found the police *484 had no valid reason to impound the car because they could have locked it and safely left it in the street or make inquiry of the owner to remove it. We disagree with the result reached and reverse.
We start with the basic premise that the Fourth Amendment proscribes only unreasonable searches, including warrantless searches. United States v. Gravitt, 484 F.2d 375, 378 (5 Cir.1973), cert. den. 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974); State v. Davis, 50 N.J. 16, 22 (1967), cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968). The test is not whether the police followed the wisest course of action, but whether they acted reasonably under the circumstances.
We believe the instant case is controlled by South Dakota v. Opperman, ___ U.S. ___, 96 S.Ct. 3092, 49 L.Ed.2d 1000, decided July 6, 1976, about six months after the trial judge rendered his opinion herein. Opperman reiterated the long-established rule that significantly less rigorous warrant requirements govern car searches than those relating to searches of homes or offices. It also recognized and approved the standard police procedure of impounding, inventorying and taking custody of a car when its occupant is arrested and removed therefrom. These caretaking procedures were approved in order to protect the owner's property while in police custody; to protect the police against the claims or disputes of disgruntled arrestees as to the contents of the car when police custody was assumed, and to protect the police from potential danger. *485 Opperman further held that an inventory car search conducted after the police assume custody is a reasonable intrusion and, therefore, constitutionally permissible. It follows, therefore, that evidence obtained during such inventory process is admissible. In particular, and relevant to the instant case, Opperman points to many cases holding that "standard inventories often include an examination of the glove compartment * * *."
With these principles in mind, we turn to the proofs in the instant case to determine whether the detectives acted reasonably in impounding and inventorying defendant's car. Defendant concedes the validity of his arrest based upon the outstanding arrest warrant. Having removed defendant from the car and assumed control over it, they merely complied with police regulations when they impounded and inventoried the car. Furthermore, N.J.S.A. 39:4-136 would appear to permit the police to remove and store a motor vehicle which cannot be moved by the operator, or is improperly parked and left unattended upon a roadway. Nor are the police circumscribed by express statutory authority to impound motor vehicles. The inherent power of the police to impound motor vehicles may arise in a myriad of factual situations too numerous to attempt to define.
We find no support in the record for the trial judge's finding that defendant's car was searched before it was impounded. As indicated, the undisputed testimony is to the contrary. The existence of printed inventory sheets attests to the fact that the police merely used standard inventory procedures in the instant case. In refusing to accept officer Roth's testimony that impoundment was a normal police procedure, the trial judge relied upon the completed impoundment sheet which contained as the reason for the impoundment "Pen Gun found in auto." The impoundment sheet was signed by officers Frank Roth, Kenneth Calabrese and Phillip Kuscielecki, but it does not indicate which one filled in the report. In view of Roth's unequivocal and uncontradicted testimony, given before Opperman was decided, *486 giving his reasons under oath for the impoundment, the mistaken or carelessly given reason on the impoundment sheet should not vitiate an otherwise valid search. The good faith of the police has in no way been impugned, and there is nothing in this record to justify the conclusion that Roth orchestrated his testimony to meet constitutional standards. Since the philosophy behind the Fourth Amendment is to deter future police behavior violative of the amendment, our suppression of the instant search where no misbehavior exists would be counterproductive and injurious to the well-being of society. See State v. Hock, 54 N.J. 526 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed. 2d 797 (1970).
It appears entirely reasonable to us that the police should impound defendant's car rather than leave it unattended on the streets of Jersey City, with all the attendant risks of vandalism, theft or unfounded charges against them for doing so. While other alternatives may have been available to them, their failure to adopt those suggested by the trial judge does not make their actions unreasonable within the meaning of the Fourth Amendment. As previously indicated, and in all fairness to the trial judge, had Opperman been decided before he rendered his decision, he might well have sustained the legality of the search.
We have also considered whether as a matter of state law and policy we should impose more stringent standards when dealing with inventory searches than were established by Opperman, but decline to do so. Although we have such right,[2] the philosophy expressed in Opperman comports with the standard of reasonableness[3] in this type of case and, therefore, a more stringent approach should not be adopted. Our views are reinforced by the American Law Institute's *487 Model Code of Pre-Arraignment Procedure, § 230.6(3), adopted May 20, 1975 and which provides:
Vehicles impounded in consequence of an arrest, or retained in official custody for other good cause, may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents.
In light of our determination that the inventory search was unassailable, we do not pass upon the issues of whether the search was sustainable as a car search under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), or as a search incidental to a lawful arrest under United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
The judgment suppressing the search is reversed.
BOTTER, J.A.D. (dissenting).
By a 5-4 decision in South Dakota v. Opperman, ___ U.S. ___, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court upheld a routine inventory search of an unattended automobile after it had been lawfully towed away and impounded by the police for multiple violations of a municipal parking ordinance. However, Opperman does not compel the result reached by the majority in this case. Nor, in my opinion, should we adopt a rule that would sustain the search here either under the Fourth Amendment or the search and seizure clause of our own Constitution. N.J. Const. (1947), Art. 1, par. 7;[1] see State v. Johnson, 68 N.J. 349, 353 (1975), adopting a "higher standard" for consent *488 searches under state law than required by the Federal Constitution.
In Opperman, a vehicle was illegally parked overnight in a downtown area of Vermillion, South Dakota. It was ticketed at 3 A.M. and 10 A.M., then towed to the police impound lot and inventoried according to usual procedures. In upholding the seizure of marijuana found in the glove compartment, the court found that (a) the police were "indisputably engaged in [a routine, community] caretaking search of a lawfully impounded automobile"; (b) the inventory was made only after the car had been impounded for multiple parking violations; (c) the owner was not present "to make other arrangements for the safekeeping of his belongings"; (d) there was no suggestion that the seizure was "a pretext concealing an investigatory police motive;" and (e) there was no claim that the inventory search was unreasonable in scope.[2]Id. ___ U.S. at ___, 96 S.Ct. at 3099-3100, 49 L.Ed.2d at 1009.
There is no need to give Opperman a broader reading than the carefully constructed opinion of Chief Justice Burger requires, although the temptation to do so is strong. Automobiles are not as sacred as dwelling places, nor should they be, considering their mobility and the uses to which they are put. Opperman's starting place is that warrantless automobile searches have been upheld in circumstances that would not justify the search of a home. ___ U.S. at ___, 96 S.Ct. at 3095, 49 L.Ed.2d at 1004, citing Cardwell v. Lewis, 417 U.S. 583, 589, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), Cady v. Dombrowski, 413 U.S. 433, 439-440, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *489 The proliferation of exceptional circumstances that may justify the search of a vehicle, the frequent use of vehicles in the commission of crimes, the growing crime rate and congested court dockets all combine to press for a general automobile exception in search and seizure law. But no general "automobile exception" to the warrant requirement exists, as the opinions in Opperman make clear. ___ U.S. at ___, 96 S.Ct. at 3095, 49 L.Ed.2d at 1004, 1013. Vehicles are "effects" protected within the meaning of the Fourth Amendment. Ibid. I would not invite their general search and seizure simply because a driver has become vulnerable to arrest for a noncriminal motor vehicle violation. As Chief Justice Weintraub said in State v. Boykins, 50 N.J. 73, 77 (1967): "Surely not every traffic violation will justify a search of every part of the vehicle."[3]
In this case defendant was arrested for a motor vehicle offense, not a crime. We are not dealing with "exigent circumstances and probable cause to believe that the car will yield contraband or evidence useful for prosecution of crime" (Note, "Warrantless Searches and Seizures of Automobiles," 87 Harv. L. Rev. 835 (1974)), circumstances that justify warrantless searches of vehicles in a criminal setting. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, supra; Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The police should be accorded more discretion in those cases than here because of the need for prompt action in response to the vehicle's mobility. And, since the Fourth Amendment protects against seizures as well as searches, once a vehicle has been lawfully seized without a warrant it is established that the vehicle may also be searched at the scene or at police *490 headquarters. Chambers v. Maroney, supra; Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). But this line of cases, impelling support for prompt police action, is inapposite to the case at hand where there was no reason to believe that defendant or the vehicle were involved in a crime.
It is not clear that the police were authorized to seize and impound the vehicle in this case. N.J.S.A. 39:4-136 provides that a vehicle which is parked or left standing, attended or unattended, outside of a business or residence district, shall be parked off the roadway when practicable in a manner that does not obstruct the highway. It further provides for removal by the police of any "[occupied] vehicle upon a roadway, which is disabled to the extent that the operator cannot move it, or any unoccupied vehicle parked or standing in violation of this chapter * * *."
It is doubtful that the statute was meant to authorize removal of a vehicle which can be lawfully parked and left unattended simply because the driver has been arrested for a motor vehicle offense. The 1951 amendment (L. 1951, c. 23, § 76) which added the provision for removal of a vehicle "which is disabled to the extent that the operator cannot move it" appears to have been adopted in response to an Attorney General's opinion holding that a vehicle left on a highway after an accident because its driver has been taken away for medical treatment is not in violation of N.J.S.A. 39:4-136. Op. Atty. Gen. No. 15, Feb. 6, 1950. However, the opinion stated that the police have the right to remove such a vehicle from the highway in order to keep the highway clear. In the case at hand there is nothing to show that defendant was not lawfully capable of driving the car, sufficient to move it off the highway and park it legally,[4] although *491 for security reasons the police officer could have parked the vehicle after defendant's arrest.
N.J.S.A. 39:4-136 by its terms looks toward the removal of vehicles which may be "a nuisance and a menace to the safe and proper regulation of traffic * * *." There is nothing in this case to show that the vehicle could not have been lawfully parked in the area. Thus, there is doubt that N.J.S.A. 39:4-136 authorized the seizure and impoundment of the vehicle. See Virgil v. Superior Court, 268 Cal. App.2d 127, 73 Cal. Rptr. 793, 796 (D. Ct. App. 1968). Other statutes which authorize seizure of motor vehicles are not applicable. See N.J.S.A. 39:5-47, providing for seizure of vehicles reasonably believed to have been stolen or operated under suspicious circumstances; N.J.S.A. 39:3-4, providing for removal of unregistered vehicles; N.J.S.A. 24:21-35(b)(4), providing for seizure of vehicles used for transporting controlled dangerous substances, and cf. State v. Boykins, supra.
In any case, it was not necessary for the police to have impounded the vehicle. Defendant was not the owner of the vehicle. If parked and locked, the owner could have used it while defendant was in police custody, in the unusual case where he would not be promptly released.[5] At least defendant could have been given the option of leaving it behind or having it transported to the police station. Thus, I would hold that where a driver is arrested solely for a motor vehicle offense and the vehicle can be lawfully parked and is not needed as evidence, such as in the case of an accident, the police should not exercise the discretionary right to impound the vehicle and inventory its contents without first obtaining the consent of the owner or operator of the vehicle.
*492 This course would obviate the conflict between a citizen's right to privacy and the claimed reasonableness of an inventory search as a means of (1) protecting the police against false claims of theft or (2) protecting the property within an impounded vehicle. State v. Hock, supra, n. 3, 54 N.J. at 534-535; see Opperman, supra, ___ U.S. at ___, 96 S.Ct. at 3107-3108, 49 L.Ed.2d at 1018-1019 (Marshall, J., dissenting); Mozzetti v. Superior Court, 4 Cal.3d 699, 706-708, 94 Cal. Rptr. 412, 416-418, 484 P.2d 84, 88-90 (Sup. Ct. 1971); Note, "Warrantless Searches and Seizures of Automobiles," supra, 87 Harv. L. Rev. at 852-853; Moylan, "The Inventory Search of an Automobile: A Willing Suspension of Disbelief," 5 U. of Baltimore L. Rev. 203, 216-220 (1976). This course would also avoid all responsibility for the contents of a vehicle which is parked and locked at the election of its owner or driver. Cf. Op. Atty. Gen. No. 15, supra; Mozzetti v. Superior Court, supra, 4 Cal.3d at 708, 94 Cal. Rptr. at 417-418, 484 P. 2d at 89-90; State v. Opperman, S.D., 228 N.W.2d 152, 159 (Sup. Ct. 1975).
Thus, this case is distinguishable from Opperman on two grounds: (1) here it is not clear that the vehicle was lawfully impounded, since it was not abandoned or disabled and could have been lawfully parked without obstructing traffic, and (2) the driver was present and could have made other arrangements for the safekeeping of the vehicle and its contents. A third distinction can also be made. Here the court found as a fact that an impoundment of the vehicle did not take place before the search. The search of the glove compartment was made at the scene immediately after defendant's arrest. A notation on the impoundment sheet stated that the reason for the impoundment was, "Pen gun found in auto." The trial judge found that there was no valid reason for the impoundment before the weapon was discovered. The arrest was in a hospital area; the car belonged to defendant's wife, and there is no reason to conclude that it could not have been parked and locked in *493 the area. The trial judge doubted the testimony of the arresting officer that the impoundment was "normal police procedure." He found that the impoundment occurred because a prior search uncovered the weapon.
There was substantial credible evidence supporting these findings, and they should not be disturbed in this court. State v. Johnson, 42 N.J. 146, 162 (1964). In fact, the record contains other evidence supporting the trial judge's findings, suggesting an additional distinction from Opperman. The testimony indicates that the search was a pretext for a criminal investigative motive. The arresting officer was a member of the narcotics squad. He testified that he discovered the outstanding traffic warrant by examining the warrant files in different precincts. He had previously executed a search warrant at defendant's residence without success. In addition, there was no need to examine the glove compartment at the scene. Defendant had been removed from the vehicle and the officer testified that he did not suspect that the vehicle contained a weapon, nor did he fear defendant. In fact, two officers were present. While no finding was made that the claimed seizure of the vehicle was a pretext for a criminal investigation, this evidence buttresses the trial judge's findings that the search occurred before the officers intended to impound the vehicle. See Moylan, "The Inventory Search of an Automobile: A Willing Suspension of Disbelief," supra. Therefore, the search could not be justified as a routine inventory search.
However, the rule I would adopt would avoid the sometimes sticky questions concerning the legal right to impound the vehicle, its conformity with usual police procedures and the real motives of the police in making the inventory. I would hold, simply, that in case of an arrest for a traffic violation, without exceptional grounds for a warrantless search of the vehicle or for its seizure to further a reasonable police need, a vehicle whose driver is present should be given the option of lawfully parking and locking the vehicle or making some other arrangements for its disposition. *494 A search made in violation of this rule would be deemed invalid. To avoid disputes concerning the consent of the driver, written consent should be obtained, if feasible. This rule would satisfy the justices who concurred in Mr. Justice Marshall's dissent in Opperman. It might also satisfy the majority of the Supreme Court, since Chief Justice Burger's majority opinion in Opperman and Justice Powell's concurring opinion both emphasized that the owner or driver of the vehicle was not present at the time the vehicle was impounded. The rule also leaves intact the law in this State that every traffic violation does not justify the search of all parts of a vehicle (State v. Boykins, supra), but that a warrantless search of a vehicle whose driver was involved in a criminal event may be justified. Id.; State v. La Porte, 62 N.J. 312, 316 (1973); State v. Gray, 59 N.J. 563, 567-570 (1971); State v. Barnes, 54 N.J. 1, 9 (1969), cert. den. 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970).
The order suppressing the evidence should be affirmed.
NOTES
[1] Officer Frank Roth testified as to the arrest and impoundment thusly:

Q What happened after you pulled the vehicle over?
A Told him to step out of the auto. He stepped out of the auto. We placed him under arrest.
Q Why did you place him under arrest?
A Because of the outstanding warrant.
Q What happened then?
A Then Detective Koscielecki was going to take it to the precinct. We searched the vehicle and in the glove compartment we found a small pen gun. It was loaded.
* * * * * * * *
Q Why was the car searched and why did you go into the glove compartment?
A Well, on arrest it's police procedure that a vehicle  when a man is operating a vehicle the vehicle is impounded and a search of the vehicle is necessary for the contents of the vehicle and it's put on the impounding sheet.
Q Was an impounding sheet made out in this case, sir?
A Yes, it was.
* * * * * * * *
THE COURT: As I understand it, you told the defendant to get out, you arrested him and you impounded the vehicle there?
THE WITNESS: Yes.
THE COURT: Then you and your partner searched the vehicle?
THE WITNESS: Yes.
It seems obvious to us that the impoundment occurred prior to the search of the glove compartment.
[2] See State v. Talbot, 71 N.J. 160, 167 (1976); State v. Deatore, 70 N.J. 100, 112-113 (1976).
[3] See State v. Hock, 54 N.J. 526, 533-535 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
[1] Article 1, par. 7 provides:

7. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.
[2] Mr. Justice Powell explains, in his concurring opinion, that an inventory search "provides no general license for the police to examine all the contents of such automobiles," particularly authorizing, in n. 7, the inventorying of documents without examining their contents. ___ U.S. at ___, 96 S.Ct. at 3102, 49 L.Ed.2d at 1011-1012.
[3] Exceptions may exist justifying a search following an arrest for a motor vehicle violation. For example, circumstances may justify the search of a vehicle for evidence of ownership (State v. Hock, 54 N.J. 526, 533-534 (1969); State v. Boykins, supra) or for evidence related to the traffic violation, such as for liquor when a driver is arrested for drunken driving. Ibid.
[4] There is no proof that defendant was driving while on the revoked list. We know that a warrant for his arrest had been issued for driving sometime in the past while on the revoked list. The police did not issue a summons for driving without a valid license at the time of his arrest.
[5] The warrant for defendant's arrest called for his release on $250 bail. Defendant was arrested at 12:30 p.m. and was, in fact, released on bail the same day.