156 N.J. Super. 551 (1978)
384 A.2d 195
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIE J. ROBERSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1978.
Decided March 8, 1978.
*552 Before Judges HALPERN, LARNER and KING.
Mr. E. Carl Broege, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney).
Ms. Jane Marter, Special Deputy Attorney General, argued the cause for respondent (Mr. Leonard D. Ronco, Special Deputy Attorney General-in-Charge (Acting Prosecutor of Essex County), attorney; Mr. Michael N. Pedicini, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by KING, J.A.D.
This case raises questions concerning the legality of the seizure of a motor vehicle following the owner's arrest for motor vehicle code violations, and the permissible scope of the police inventory search following *553 impoundment. Defendant was convicted of unlawful possession of stolen goods. He appeals, asserting that the trial judge erred in refusing to suppress evidence, the stolen goods discovered in the locked trunk of his vehicle, following his arrest for driving without insurance while his operator's license was suspended.
At noon on May 19, 1975 Detective DeMarco and Officer Ferrara of the Newark Police Department stopped a 1964 Buick operated by defendant at 15th Avenue and South 10th Street in the City of Newark. DeMarco had arrested defendant one month before for driving without insurance, in violation of N.J.S.A. 39:3-29 and the Compulsory Motor Vehicle Insurance Law, L. 1972, c. 197; N.J.S.A. 39:6B-1 and 2. DeMarco appeared in court at the hearing on this charge and therefore knew defendant's driving privileges had been suspended. N.J.S.A. 39:6B-2 mandates a six-month suspension of driving privileges for a first violation of operating without liability insurance.
In response to the officers' request, defendant produced a driver's license and registration, but did not produce an insurance identification card as required by the statute. Based on the two violations, no insurance card and driving while suspended, defendant was placed under arrest, put in the squad car and driven to police headquarters. One of the officers drove defendant's car to headquarters. At headquarters defendant claimed to have valid liability insurance, but the officers' check with his alleged carrier revealed this claim to be untrue. Defendant was then booked for operating a vehicle without insurance and while on the suspended list. Following the booking the officers conducted a standard inventory search of the vehicle before towing it to the impound site. During the inventory search the police discovered a key to the locked trunk in an ashtray in the car. The inventory search of the trunk revealed five tires and an attache case. These items were later traced to a vehicle which had been stolen, stripped and abandoned in Newark the day before. Defendant was convicted of possession of the stolen tires and *554 attache case and now appeals, claiming this evidence was the product of an unconstitutional search in violation of his federal and state rights.
Defendant attacks the validity of the search of the trunk and the seizure of the stolen property on several grounds. He first contends the police should not have arrested him but should have merely issued a traffic summons pursuant to R. 7:6-1(a). He next contends that the police had no right to impound the vehicle for these motor vehicle offenses. He finally contends that, even assuming the arrest and the impoundment were proper, the inventory search was excessive in scope, and the police had no right to go into the locked trunk. We disagree and affirm the denial of the motion to suppress.
The officers possessed the statutory authority to arrest defendant without a warrant pursuant to N.J.S.A. 39:5-25, which states in pertinent part:
Any * * * police officer * * * may, without a warrant, arrest any person violating in his presence any provision of chapter three of this Title * * *
The officers observed defendant violating two provisions of Chapter 3 of Title 39, failing to have an insurance card in his possession, in violation of N.J.S.A. 39:3-29, and driving a vehicle while his license was suspended, in violation of N.J.S.A. 39:3-40. The officer also has discretion under the statute to serve a summons instead of arresting the offender. Defendant contends that R. 7:6-1(a) which states:
In cases involving violations of statutes or ordinances relating to the operation or use of motor vehicles, * * *, the complaint and summons shall be a uniform traffic ticket in the form prescribed by the Administrative Director of the Courts.
compels the arresting officer to issue a summons and does not permit an arrest to be made. While in most traffic violations the police should and normally do proceed by *555 summons, the violations here were serious and the police acted properly when they arrested defendant and impounded the vehicle. To have done otherwise would have permitted a suspended operator to drive away in an uninsured vehicle, thereby countenancing continuous violations. Defendant relies on dictum in State v. Jones, 122 N.J. Super. 585, 592 (Cty. Ct. 1973), to support the contention that police never have the power to arrest for violations of Title 39, Chapter 3, motor vehicle offenses. We do not read R. 7:6-1(a) so broadly as to abrogate all statutory arrests for such violations. In Jones no arrest was in fact made until after the seizure and search of the vehicle. The seizure was justified because the vehicle represented a safety hazard, and the search was upheld. In reference to the present case, subsequent conviction for operating a vehicle without insurance carries a mandatory three-month jail sentence. N.J.S.A. 39:6B-2. A violation of N.J.S.A. 39:3-40, driving while suspended, carries a mandatory minimum fine of $200, a maximum fine of $1,000, and a possible jail sentence up to six months. Under these circumstances we cannot say the police acted unreasonably in arresting defendant at the scene of the offense.
Standard police inventory searches following impoundment of vehicles received constitutional sanction in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). There the police towed a locked vehicle from the public street because of violations of municipal parking ordinances. During the routine inventory conducted prior to storage the police found drugs in the unlocked glove compartment. Chief Justice Burger stated in the majority opinion upholding the constitutionality of the search: "The authority of the police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." 428 U.S. at 369, 96 S.Ct. at 3096, 49 L.Ed.2d at 1005. The conduct of an inventory of the vehicle during this "caretaking function" by the police was said to have a three-fold justification: (1) the protection of the owner's property while in police custody; (2) the *556 protection of the police against claims of lost or stolen property, and (3) the protection of the police from potential danger. Id.
Since the Opperman case this court has considered the validity of inventory searches following impoundment of a vehicle in State v. Slockbower, 145 N.J. Super. 480 (App. Div. 1976), motion for leave to appeal granted, 74 N.J. 255 (1977), where a divided court upheld a search following defendant's arrest on an outstanding traffic warrant. See also, State v. Parker, 153 N.J. Super. 481 (App. Div. 1977). In Slockbower the defendant was arrested while driving on a city street, by officers who were aware of an outstanding warrant issued for driving while on the revoked list. The inventory search was conducted at the scene of arrest and revealed a loaded pistol in the unlocked glove compartment. The police had no express statutory authority to impound the car in Slockbower, nor did they have such power in the present case. However, as this court noted in Slockbower, the police are not "circumscribed by express statutory authority to impound motor vehicles." 145 N.J. Super. at 485. "The inherent power of the police to impound motor vehicles may arise in a myriad of factual situations too numerous to attempt to define." Id. We hold the factual situation before us to be within such inherent power.
We can only conclude that the police acted reasonably in this situation. If they simply issued a summons, defendant could have driven away in his uninsured vehicle, a continuing threat to the public. If they decided to arrest defendant but to park the vehicle on the streets of Newark, defendant would have undoubtedly arranged for a friend to drive the uninsured vehicle away, posing the same threat to innocent pedestrians and motorists. Also, as we noted in Slockbower, it was not unreasonable for the police to impound the car rather than leave it unattended on city streets "with all the attendant risks of vandalism, theft or unfounded charges against them for doing so." 145 N.J. Super. at 486. There is no proof in the record that the passenger in defendant's *557 car was a licensed driver or otherwise a suitable custodian of the vehicle. The police made an effort at the station house to verify defendant's assertion of insurance before the vehicle was inventoried. We conclude that their decision to impound the vehicle was entirely appropriate.
Defendant finally contends that the search of the locked trunk was beyond the scope of reasonableness. We do not agree. The scope and intensity of a search is dictated by the surrounding circumstances. This court has recently held that probable cause for a visual search of the interior of a vehicle does not justify interfering with the structural integrity of the vehicle. The "scope and intensity must not be disproportionate to the circumstances giving rise to" the search. State v. Murray, 151 N.J. Super. 300, 307 (App. Div. 1977).
Given the three-fold purpose of the inventory search discussed supra, we do not find the search of the locked trunk excessive in this case. The trunk may readily contain property of the owner requiring protection. The police are just as exposed to claims of lost or stolen property from the trunk as from any other part of the car. The trunk is as likely to contain dangerous articles as the glove compartment or the areas under the seat or the hood. Additionally, the key to the trunk was found in an unsecured location, and the police did not have to break open the trunk. Nor is there any suggestion that the inventory procedure "was a pretext concealing an investigatory police motive." South Dakota v. Opperman, supra, 428 U.S. at 379, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009.
Several recent federal appellate cases agree with the position we take here. In United States v. Martin, 566 F.2d 1143 (10 Cir.1977), defendant was found noticeably drunk while in his parked car during the middle of the night. He was arrested for violation of a Tulsa municipal ordinance prohibiting public drunkenness. The arresting officers decided that he was in no condition to operate his vehicle and that the car should be towed to the garage. The United States *558 Court of Appeals for the Tenth Circuit upheld the seizure of a shotgun from the locked trunk of the car which they concluded was properly impounded and inventoried following the owner's arrest. The Tenth Circuit found no difference between the search of the locked trunk and the search of the entire locked vehicle in South Dakota v. Opperman, supra. As long as the inventory procedure was legitimate, the search of the locked trunk was not excessive.
In Cabbler v. Superintendent, Virginia State Penitentiary, 528 F.2d 1142 (4 Cir.1975), cert. den., 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976), defendant was arrested in a hospital emergency room following a shooting episode. He had left his car parked in a driveway leading to the emergency room. The police took defendant's car keys away upon arrest and removed his car from the driveway, where it was a traffic nuisance. After impoundment the police unlocked the trunk and removed numerous items of personalty. These items were stolen and were the basis for the conviction from which defendant sought federal habeas relief. The Fourth Circuit Court of Appeals found this routine inventory search, which included the locked trunk area, "reasonable as a sound police practice to protect both the owner from loss and the city from damage claims." Id. at 1147. We also note that the majority opinion of the United States Supreme Court in South Dakota v. Opperman, supra, 428 U.S. at 368, 96 S.Ct. at 3096, 49 L.Ed.2d at 1005, cites with approval the opinion of the Virginia Supreme Court upholding the direct attack by the petitioner on the search and seizure in Cabbler v. Superintendent, Virginia State Penitentiary, supra.[1]
Defendant relies on United States v. Lawson, 487 F.2d 468 (8 Cir.1973). There defendants were arrested for passing bad checks. At the time of arrest their car was parked in *559 a Holiday Inn Motel parking lot with the doors and trunk locked. The police impounded the car, broke into the trunk, and found a pistol. The Eighth Circuit held the search was unreasonable and suppressed the pistol. The only justification for the search was the "bare police custody of the vehicle." Id. at 475. The offenses for which defendants were arrested bore no relationship to the use of the vehicle. The Eighth Circuit held the police had no legitimate reason for impounding the vehicle in the first instance. Lawson was pre-Opperman and does not even reach the question of the proper scope of a legitimate inventory search.
We conclude that the Newark policemen properly arrested defendant for driving without insurance while his license was suspended and were justified, under all of the circumstances, in impounding the vehicle. The inventory search of the trunk following the seizure was also justified. The conviction is affirmed.
Affirmed.
NOTES
[1] The direct appeal is reported as Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781 (1971), cert. den., 405 U.S. 1073, 92 S.Ct. 1501, 31 L.Ed.2d 807 (1972).