113 N.J. Super. 434 (1971)
274 A.2d 69
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WAYNE EDWARD GAMMONS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1971.
Decided February 23, 1971.
*435 Before Judges CONFORD, KOLOVSKY and CARTON.
Mr. Elson P. Kendall, Assistant Prosecutor, argued the cause for appellant (Mr. Leo Kaplowitz, Union County Prosecutor, attorney; Mr. Arthur J. Timins, Assistant Prosecutor, on the brief).
Respondent did not file a brief.
The opinion of the court was delivered by KOLOVSKY, J.A.D.
The State appeals, upon leave granted, from an order suppressing evidence, a revolver found by the police in the glove compartment of defendant's automobile.
*436 The trial court ruled that the police had conducted an "unreasonable search and seizure." However, we conclude that in the factual circumstances of this case, as found by the trial court, the police officers' procedures and their search of defendant's automobile were justified and reasonable. We therefore reverse.
In making its findings of fact, the trial court gave full credence to the testimony of the police officers involved, Officers Hall and Machnik.
On the day in question, defendant's Cadillac automobile collided with a Union Township police car. Officer Hall and another officer were dispatched to the scene to investigate the accident. By the time Hall arrived defendant had already been removed to a hospital. After investigating the accident, obtaining the names of witnesses and drawing a diagram of the scene, Hall went to the hospital and spoke to defendant. Although defendant said that both his driver's license and the registration certificate were in his wallet, only the driver's license was there. Hall then telephoned police headquarters and told the dispatcher, Officer Machnik, that defendant did not have the registration certificate and that "possibly" it was still in the car.
Machnik informed his superior officer and eventually suggested that the police towing service, which was taking defendant's disabled car to a service station, first bring the car to police headquarters. This was done. Machnik entered the car, removed the keys from the ignition and opened the locked glove compartment intending only, as the court found, to look for the registration certificate. The certificate was not there but the glove compartment did contain a fully loaded five-shot revolver. Shortly thereafter Officer Donnelly, who had accompanied Machnik to the car, found the registration certificate among some debris on the car floor.
In our view, the action taken by the police officers was proper and there is no basis for characterizing their search as unreasonable. "It is unreasonableness which is the Fourth *437 Amendment's standard." Wyman v. James, 400 U.S. 309 91 S.Ct. 381, 386, 27 L.Ed.2d 408 (1971).
The police officers were obligated to investigate the accident and submit a written report with respect thereto. N.J.S.A. 39:4-131. That obligation required, among other things, that they procure and examine not only the licenses issued to the drivers of the vehicles but also the registrations of the automobiles involved. By law, N.J.S.A. 39:3-29, the driver's license and registration certificate are required to be in the possession of the driver at all times and to be exhibited upon request to a police officer so that he may determine, among other things, the "correctness of the registration certificate, as it relates to the registration number and number plates of the motor vehicle for which it was issued."
The validity of the statutory requirement is evident. Indeed, it has been held that the police practice of establishing roadblocks or other temporary stoppage of automobiles on the highway "for license and motor vehicle registration checks [is not] an illegal invasion of the motorists right of privacy, contrary to the provisions of the Fourth Amendment of the United States Constitution and Art. I, par. 7 of the Constitution of New Jersey" and that such practice "represents a valid exercise of the State's police power in furtherance of the State's legitimate interest." State v. Kabayama, 98 N.J. Super. 85, 87-88 (App. Div. 1967), aff'd o.b. 52 N.J. 507 (1968).
When defendant could not produce his registration certificate at the hospital, Officer Hall made the perfectly logical deduction that it might still be in the damaged car which the police had the right to search for evidence of ownership in view of defendant's failure to produce the certificate. State v. Boykins, 50 N.J. 73, 77 (1967); People v. Prochnau, 251 Cal. App.2d 22, 59 Cal. Rptr. 265, 270 (D. Ct. App. 1967).
Machnik, in turn, looked for the registration in the glove compartment, the logical place to look. See People v. Prochnau, *438 supra. There was nothing improper or unreasonable in his doing so.
The dissenting opinion emphasizes defendant's testimony that he had, at the scene of the accident, shown an unidentified police officer both his driver's license and the registration certificate. The court made no finding as to the credibility of that testimony. And, contrary to what is stated in the dissenting opinion, we find nothing in the report of Officer Landolfi, admitted into evidence as a joint exhibit because Landolfi was hospitalized, which tends to corroborate defendant.
Further, even if defendant's testimony be accepted as true, it in no wise impairs the reasonableness of the conduct of Officers Hall, Machnik and Donnelly. There is no evidence that they knew of the alleged prior exhibition of the registration certificate to another police officer. Indeed, on cross-examination by defense counsel, both Officers Hall and Machnik denied that they had been told by other police officers that defendant had shown them the registration certificate at the scene of the accident.
The order suppressing evidence is reversed.
CONFORD, P.J.A.D. (dissenting)
I am of the view that the trial judge was right in holding the search of the glove compartment of defendant's automobile unconstitutional and suppressing the product of that search. A fuller look at the facts will be helpful.
This incident arose out of a garden-variety automobile accident between defendant's vehicle and a local police patrol car in which the police-driver, as well as defendant and his passenger, were injured. All the injured were removed to the hospital. Defendant sustained head injuries and was obviously in a stunned condition immediately after the accident.
A total of eight or nine police officers was involved in the ensuing investigation at the scene. At least two of them (not Officer Hall, who arrived after defendant was removed *439 to the hospital) interrogated defendant at the scene. According to defendant, he was interrogated by two officers and asked for and showed at least one of them both his driver's license and the registration certificate before he was removed from the car. This was not controverted by any proof of the State, and tends to be corroborated by the report of Officer Landolfi, who was there before defendant was removed, and which shows (a) that he "checked" defendant's vehicle; (b) that Officer Budney also went to defendant's car, and (c) defendant's name and address as well as the vehicle plate number. The probability that defendant showed the certificate at the scene is also supported by the fact that it was later found by the police on the floor of the car. Defendant said he normally kept the certificate on the sunvisor. (He may in his dazed condition have dropped it on the floor inadvertently after showing it to a police officer or it may have fallen there subsequently in the course of removal of the vehicle from the scene.)
There is not the remotest suggestion in this case that the police suspected defendant of wrongdoing of any nature, traffic or otherwise  least of all stealing the car he was driving. The collective activity of Officers Hall, Machnik and Donnelly was for the purpose only of obtaining information needed to fill out and file with the Division of Motor Vehicles the accident report required under N.J.S.A. 39:4-131. Such a report is designed to assist the Division in performance of its administrative functions in relation to financial security (see N.J.S.A. 39:4-130) and compliance by drivers and owners with various requirements of the motor vehicle laws. Conceding that information as to the serial number and other details of the car shown on the registration certificate is called for by the form, it is evident that that information could have readily been supplied by the Division of Motor Vehicles from its own records, given the name of the owner, his address, the license plate number and the general description of the car, all of which were known to the police.
*440 Officer Hall did not ask defendant for permission to look for the certificate in the car or to send someone out to the car for it. Defendant had not committed any violation of the law in not having the certificate on his person at the hospital. It was only necessary that he have it in his possession while driving a car, N.J.S.A. 39:3-29; and in this case it is certain that he had had such possession while driving, and it is highly probable that one of the investigating officers at the scene knew that fact.
The stark issue presented is whether the interest of a citizen in freedom from warrantless intrusion into a constitutionally protected area is to be sacrificed to the interest of police officers in the expeditious performance of an administrative function related to the operation and financial security of operators and owners of motor vehicles, and totally irrelevant, in the particular circumstances, to any investigation or remote suspicion of crime or even of a traffic violation. ("It was just an accident," testified Officer Hall.) In my view, there can be only one correct answer to the question.
In Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court held the basic Fourth Amendment requirement of a warrant applicable, and issuance of a warrant necessary, to justify entry into constitutionally protected premises, even where the entry was for administrative inspection purposes, and not to seek out evidence of commission of crime.[1] Responding *441 to an argument like that made here by the State  that the inspection was not done to find "evidence of criminal action"  the court responded, in Camara:
Since the inspector does not ask that the property owner open his doors to a search for "evidence of criminal action" which may be used to secure the owner's criminal conviction, historic interests of "self-protection" jointly protected by the Fourth and Fifth Amendments are said not to be involved, but only the less intense "right to be secure from intrusion into personal privacy." * * *
We may agree that a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime. * * * But we cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely "peripheral." It is purely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. [387 U.S. at 530, 87 S.Ct. at 1731]; (emphasis added.)
Thus the innocuousness of the officers' purpose in unlocking the glove compartment and searching it is irrevelant. The high constitutional value of security of one's "effects" (Fourth Amendment) from warrantless intrusion cannot be so simply depreciated. "Eyes may not be closed to the infringement of a constitutional right because the officer was well-meaning or the transgression is deemed slight; and erosions must at all times be carefully guarded against lest they lead to the destruction of the right itself." Jacobs, J., in State v. Macri, 39 N.J. 250, 265 (1963).
The court's reliance on State v. Boykins, 50 N.J. 73, 77 (1967), does not support its decision. The dictum there that if an operator is unable to produce proof of registration, the officer may search the car for evidence of ownership, is here inapplicable as defendant was not operating the car when asked for the certificate and since the suspicion that would arguably be engendered by such default by an operator is not present where, as here, the owner is asked for the registration certificate while on a hospital bed after an accident. As noted above, the statute requires production of the certificate only by one then operating a vehicle. Moreover, the *442 evidence here negates any notion that the officers had any doubt or suspicion as to defendant's ownership.
While Boykins, supra, and other of our New Jersey decisions cogently emphasize the care with which search questions involving moving vehicles as distinguished from fixed premises must be approached, it remains the law that, except as limited by considerations pertinent to the mobility of a motor vehicle in relation to its potential use for crime, Boykins, passim, automobiles represent a substantial category of normal repository of personal effects of the citizenry at large, and, generally speaking, are and should be within the protection of the Fourth Amendment. See Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 221-222, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); State v. Wade, 89 N.J. Super. 139, 157 (App. Div. 1965). No New Jersey case says the opposite.
The most recent and comprehensive authoritative consideration of the constitutional law of search and seizure in relation to automobiles is the opinion in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The United States Supreme Court there reviewed the cases since Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), leading to the now solid doctrine that because of its mobility a motor vehicle may generally be searched without a warrant, but only on probable cause to believe the car contains objects including evidence which the police are entitled to seize (399 U.S. at 48, 90 S.Ct. 1975). Yet, even in stating that broad category of exception from the warrant requirement, the court took the precaution of saying (at 50, 90 S.Ct. at 1980): "Neither Carroll, supra, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy which a warrant affords." The Chambers court held that a warrantless search of a car which would there have been justified by strong probable cause at the time the car was stopped on the highway could as well be *443 made at the police station to which the car had been removed for convenience after being stopped. The court found "little to choose in terms of practical consequences" between the two search situations thus compared (at 52, 90 S.Ct. 1975). Seven members of the court joined in the opinion on the search validity question. Mr. Justice Harlan, alone, dissented (at 55, 90 S.Ct. 1975), finding the search invalid because the car was immobile at the police station and because obtaining a search warrant was therefore practicable (at 61-65, 90 S.Ct. 1975).
We thus have a contemporaneous expression of the United States Supreme Court, in which all the voting justices joined to the extent of reaffirming previously stated minimum requirements of probable cause for a warrantless search of an automobile.[2] In my view, that authoritative determination supersedes any previous inconsistent cases and precludes any holding that, without regard to its guidelines, and without coming within one of the other established exceptions to the requirement of a warrant, a warrantless search of an automobile is valid merely because "reasonable" from the ad hoc standpoint of a police officer doing his job without thought of Fourth Amendment requirements or rights of citizens to privacy in their effects. See Chimel v. California, 395 U.S. 752, 764-765, 89 S.Ct. 2034, 2041, 23 L.Ed.2d 685 (1969), holding that "reasonableness" is to be assayed on considerations "relevant to Fourth Amendment interests," not on "a subjective view regarding the acceptability of certain sorts of police conduct."
The United States Supreme Court has on at least three separate occasions during the last few years emphasized that *444 basically "reasonableness," for Fourth Amendment purposes, is equatable with the obtaining of a valid search warrant "except in certain carefully defined classes of cases" (the oft-referred to "exceptions"): Blackmun, J., in Wyman v. James, supra, 400 U.S. 309 at 316, 91 S.Ct. 381 at 385, 27 L.Ed.2d 408; White, J., in Camara v. Municipal Court, supra, 387 U.S. at 528-529, 87 S.Ct. 1727; and Stewart, J., in Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970);[3] see also State v. Macri, supra 39 N.J. at 254.
It may be suggested that in the instant case the emphasis on the need for a search warrant is irrelevant because the police had no intent to enter the glove compartment to find evidence of crime and could not have obtained a valid search warrant if they sought one. But any such observation simply underscores the absence of justification, as against preeminent Fourth Amendment values and safeguards, for the intrusion upon the privacy of defendant's effects. That fact gains emphasis from the consideration that no important law enforcement objective would have been lost if the police had sought the information needed for the accident report in the other readily available ways mentioned above if consent for the search could not be obtained.
I think the approach and the decision of the trial court in this matter were correct, and I would sustain it.
NOTES
[1] The force and effect of Camara and See are not weakened by Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed. 2d 408 (January 12, 1971), which cites those cases as continuing authority and iterates that "* * * one's Fourth Amendment protection subsists apart from his being suspected of criminal behavior." That case held no unconstitutional search was involved in the refusal of a state to provide welfare benefits to a person who refuses to allow a home inspection visit required as a condition for benefits under the law. Basically the case holds there was no search involved at all, as indeed there was not, and that imposition of the condition of home visits for receipt of benefits invaded no Fourth Amendment rights. The decision and its rationale are not apposite here.
[2] Distinguish a case like Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), where, as pointed out in Dyke v. Taylor Implement Mfg. Co., supra, 391 U.S. at 221-222, 88 S.Ct. 1472, a state statute required the vehicle to be impounded pending forfeiture proceedings. Presumably, requirements of a warrant for a car search are also subject to the standard exceptions of consent, search incidental to valid arrest and emergent or necessitous circumstances.
[3] Where the language used, quoting from Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), was: "only in `a few specifically established and well-delineated' situations."

"Reasonableness" is also applied as a dominant factor when the United States Supreme Court considers whether to enlarge or narrow the "exceptions" to the general prerequisite of a search warrant. See, e.g., Terry v. Ohio, 392 U.S. 1, 8-10, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (the "stop and frisk" exception); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 298-299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (the "hot pursuit" type of exigent circumstance exception); Chimel v. California, supra, 395 U.S. at 764-765, 89 S.Ct. 2034 (search incident to arrest).