CHIEF JUSTICE RABNER, dissenting.
To safeguard the rights guaranteed by the Fourth Amendment and Article I, Paragraph 7 of the State Constitution, the police must obtain a warrant from an impartial judicial officer before they may conduct a search. In limited circumstances, law enforcement can justify a warrantless search if it is based on a well-delineated exception to the warrant requirement.
The Court today invokes a "driving credentials exception" to uphold a warrantless search of a car for a driver's registration and insurance. Because the doctrine does not rest on solid legal ground, I believe the Court should reconsider rather than reinforce the theory.
In this case, the police conducted a warrantless search of a sports-utility vehicle (SUV) less than two minutes after a stop to search for the driver's registration and insurance. The driver had committed two motor vehicle violations: he drove through a stop sign and made unsafe lane changes. The police then lawfully stopped him.
The driver handed over a valid license but did not give the police his registration and insurance card. With guns pointed at him, he did not respond when the police first asked for the documents and shrugged in response to a second request. At that point, the motor vehicle offenses were complete, and the police knew they had no need for additional credentials to write up a traffic summons. They also knew that the vehicle had not been reported stolen and that defendant was unarmed. Nonetheless, **249 without a search warrant, without probable cause to believe the car contained evidence of a crime, without a basis to search for weapons, and without a legitimate law enforcement need for any other documents, the police searched the glove compartment--within two minutes of stopping the car.
A warrantless search is presumptively invalid under the Federal and State Constitutions. The police here relied on a "driving credentials exception" to the warrant requirement. A single sentence in dicta from fifty years ago suggested that officers can "search [a] car for evidence of ownership" "if the operator is unable to produce proof of registration." State v. Boykins, 50 N.J. 73, 77, 232 A.2d 141 (1967). The Court has repeated the comment *397 since then with little analysis to justify the underlying concept. Today, the Court cements a warrant exception to search for driving credentials.
There are multiple well-settled exceptions to the warrant requirement, and a few relate directly to motor vehicles. The police may search a vehicle if they have probable cause to believe it contains contraband or evidence of an offense. California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) ; State v. Witt, 223 N.J. 409, 447, 126 A.3d 850 (2015). They may conduct a protective sweep--for officer safety--if there are specific and articulable facts that show the suspect is dangerous and may gain immediate control of a weapon. Michigan v. Long, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) ; State v. Lund, 119 N.J. 35, 50, 573 A.2d 1376 (1990). Law enforcement may also rely on other recognized exceptions to the warrant requirement. But despite the language in Boykins from a half century ago, few jurisdictions have allowed police officers to search a vehicle for driving credentials when they lack probable cause, cannot articulate a safety need, and have no legitimate law enforcement need for the items sought.
Because the driving credentials exception erodes one of the most basic constitutional protections, I respectfully dissent.
**250 I.
On New Year's Eve of 2010, a Union Township police officer saw a white GMC Acadia (a mid-size SUV) drive through a stop sign and turn onto Morris Avenue. The officer activated the patrol car's overhead lights and sirens and drove behind the SUV. The driver did not pull over; he continued driving and changed lanes several times without signaling.
The officer called dispatch to summon backup and report the make and license plate of the SUV. Dispatch responded that the vehicle had been rented from Hertz at Newark Airport. Had it been reported stolen, dispatch would have relayed that information as well. It did not. The SUV eventually stopped at a gas station after traveling about a half mile.
The officer parked behind the vehicle, and a back-up patrol car boxed in the SUV from the front. Two officers then approached the SUV on foot with their guns drawn. One pointed his gun at the driver and instructed him to show his hands; the driver did not comply. After twenty to thirty seconds, the officer opened the front door on the driver's side and ordered the driver to get out. The driver stepped out of the car, stood against the car with his hands in his pockets, and asked why he had been pulled over.
The officer directed the driver to take his hands out of his pockets; the driver complied only after "a couple of" requests. The officers then patted the driver down to check for weapons--and found none. After an officer asked for identification, the driver took out his wallet and handed over a valid New Jersey driver's license. The officer called dispatch, confirmed that the information on the license was accurate, and learned that the driver had no outstanding warrants.
The officer twice asked the driver for the vehicle registration and insurance card. The driver did not respond and shrugged his shoulders. When the officer asked if he owned the car or had any paperwork for it, the driver still made no response.
**251 At this point, less than two minutes after the stop, the officer entered the SUV--without a warrant--and searched the glove compartment. At a hearing on a motion to suppress, the officer at first *398 testified that he needed the insurance card and registration to issue "a Title 39 summons for failure to stop and unsafe lane change." On cross-examination, the officer conceded that he did not need either document to issue a summons for the traffic violations. He agreed that he could look up the registration information on a terminal in the patrol car, and acknowledged that, because the SUV was a rental car, he knew that it was registered to Hertz and not the driver.
The officer found nothing in the empty glove compartment. But during the approximately ninety seconds he spent inside the SUV, he noticed the handle of a handgun "just out from ... underneath" the front passenger seat.
The officer then arrested the driver, defendant Ornette Terry, and searched him. Inside defendant's coat pocket, the officer found a valid Hertz rental agreement for the SUV. The police impounded the car, obtained a search warrant, and seized the gun, which was loaded with hollow-point bullets.
A grand jury charged defendant with second-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b), and fourth-degree unlawful possession of hollow-point bullets, contrary to N.J.S.A. 2C:39-3(f). He was not charged with other offenses.
II.
Under both the Federal and State Constitutions, there is a strong preference for police officers to obtain a warrant before they conduct a search. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ; State v. Gonzales, 227 N.J. 77, 90, 148 A.3d 407 (2016). A warrantless search is presumptively invalid, and the State has the burden to justify it under one of the limited number of "specifically established and well-delineated exceptions" to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ;
**252 State v. Reece, 222 N.J. 154, 167, 117 A.3d 1235 (2015). Such exceptions are "jealously and carefully drawn." Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).
The automobile exception is one of the few recognized exceptions. To invoke the exception under the Fourth Amendment, the motor vehicle must be "readily mobile," and the officer must have probable cause "to believe [the vehicle] contains contraband." Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). Under Article I, Paragraph 7 of the State Constitution, the State must also show that probable cause arose "from unforeseeable and spontaneous circumstances." Witt, 223 N.J. at 450, 126 A.3d 850. Because the police lacked probable cause to believe that evidence of a crime would be found in defendant's car, the State does not rely on the well-settled automobile exception here.
Officer safety provides another legitimate basis for a warrantless search. Under Long and Lund, police can conduct a protective sweep of a car when they have a specific, articulable basis to believe they are dealing with an armed and dangerous individual. 463 U.S. at 1049-50, 103 S.Ct. 3469 ; 119 N.J. at 50, 573 A.2d 1376. Because the police could not make that showing, the State does not rely on the safety exception either.
In appropriate cases, other well-recognized exceptions to the warrant requirement can justify a warrantless search of a vehicle, including consent, Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ; State v. Carty, 170 N.J. 632, 635, 790 A.2d 903 (2002) ; plain view, *399 Coolidge v. New Hampshire, 403 U.S. 443, 465-66, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion); Gonzales, 227 N.J. at 82, 148 A.3d 407 ; community caretaking, Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ; State v. Vargas, 213 N.J. 301, 314, 63 A.3d 175 (2013) ; and exigency, Kentucky v. King, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ; State v. Cassidy, 179 N.J. 150, 160, 843 A.2d 1132 (2004). None of those exceptions apply here. **253 The State instead contends that New Jersey's driving credentials exception justified a warrantless search within two minutes of the traffic stop in this case. An examination of the history and scope of the exception reveals that its foundation is far from strong.
A.
The doctrine stems from Boykins. In that 1967 case, the defendant led police on a dangerous, high-speed car chase. 50 N.J. at 75, 232 A.2d 141. During the chase, the "[d]efendant's car narrowly missed two pedestrians." Ibid. The police fired at the car to disable it and killed one of the passengers. Ibid. When the car finally stopped, police searched it and found an envelope that contained marijuana. Id. at 75-76, 232 A.2d 141. This Court upheld the warrantless search under a theory akin to the automobile exception. Under the circumstances, the Court found a strong "probability that the occupants had on their persons or in the car contraband or instruments or the fruit of crime." Id. at 78, 232 A.2d 141. In short, the Court found probable cause to justify a car search without a warrant. The Court added the following observation in dicta:
Surely not every traffic violation will justify a search of every part of the vehicle. A traffic violation as such will justify a search for things related to it. So, for example, if the operator is unable to produce proof of registration, the officer may search the car for evidence of ownership....
[ Id. at 77, 232 A.2d 141 (emphasis added) (citations omitted).]
To support that proposition, the Court cited two out-of-state cases: People v. Prochnau, 251 Cal.App.2d 22, 59 Cal.Rptr. 265 (1967), and Draper v. Maryland, 265 F.Supp. 718 (D. Md. 1967).
Prochnau did not involve a typical traffic stop. In that case, a police officer arrested the defendant on the request of a parole officer for a parole violation. 59 Cal.Rptr. at 268-69. The police impounded the defendant's car to safeguard its contents. Id. at 268, 270. They later searched the glove compartment to determine who the car was registered to--"for their guidance in the ultimate **254 disposition of the vehicle." Id. at 270. The intermediate California appellate court found that the search was not unreasonable. Ibid.
In Draper, the police stopped a car "for a routine registration and license check." 265 F.Supp. at 720. The driver, defendant Price Draper, had no license and no identification. Ibid. He handed the police a registration card in the name of "Roscoe Jones." Ibid. The police arrested him for driving without a license and issued a summons. Ibid. Next, they left Draper's car at the side of the road and took him to the sheriff's office to make arrangements to raise money for bail. Ibid. Soon after, the arresting officer returned to the car and searched it "[p]reparatory to storing the car" and "to obtain further identification." Id. at 720-21.
The "narrow question" before the district court was whether "the search of the vehicle ... was incidental to and substantially contemporaneous with" the defendant's *400 arrest. Id. at 720. The court concluded that it was. Id. at 721.
Neither Prochnau nor Draper supports the notion that police may search a vehicle for driving credentials, outside of an arrest context, because the driver was unable to produce proof of registration. Cf. Boykins, 50 N.J. at 77, 232 A.2d 141.
B.
Over the years, the Court has repeated the dicta in Boykins on a number of occasions. See, e.g., State v. Keaton, 222 N.J. 438, 448-49, 119 A.3d 906 (2015) ; State v. Pena-Flores, 198 N.J. 6, 31, 965 A.2d 114 (2009) ; State v. Hock, 54 N.J. 526, 533, 257 A.2d 699 (1969). Those cases are discussed below. In one, the Court did not uphold a warrantless search; in another, probable cause existed; in the third, there was a basis to search other than the credentials doctrine. The opinions, thus, did not analyze the theory underlying Boykins in depth. In State v. Lark, however, both the Appellate Division and this Court discussed the credentials exception at some length and raised serious doubts about it.
**255 163 N.J. 294, 748 A.2d 1103 (2000) ; 319 N.J. Super. 618, 726 A.2d 294 (App. Div. 1999).
1.
In Lark, the police stopped a car for a relatively minor traffic violation--a missing front license plate. 319 N.J. Super. at 621, 726 A.2d 294. The passenger provided a registration certificate, insurance card, and driver's license. Ibid. According to a computer check, the car had not been reported stolen, and the registration was valid. Ibid. The driver, however, could not produce a license, and no record of a license in his name could be found through a computer search. Ibid. The officer suspected that the driver lied when he said "he could not produce his license because he had been mugged the week before." Id. at 622, 726 A.2d 294. The officer then searched the car for identifying papers and found drugs. Ibid.
The Appellate Division suppressed the search. It noted that "none of the frequently recognized exceptions to the probable cause requirement" justified the search. Id. at 624, 726 A.2d 294. Nothing in the record supported a protective sweep; the drugs were not in plain view; and the defendant had not consented to a search. Id. at 624-25, 726 A.2d 294.
The State relied on the dictum in Boykins, which the Appellate Division declined to embrace. The panel explained that although the "dictum appears to approve of registration searches without probable cause," it is "problematic" because "[s]ince Boykins, no Supreme Court has allowed a search based solely on a driver's inability to present driving credentials. In every case we examined, the facts supported probable cause to search or arrest. Notably, the search in Boykins itself was based on probable cause." Id. at 625-26, 726 A.2d 294 (footnote citing cases omitted). The panel added that, "[i]n any event, because this case does not involve a registration search, we need not determine the full import of the Boykins dictum here." Id. at 626, 726 A.2d 294 (emphasis added).
**256 Returning to the facts of the search, the Appellate Division observed that there was no basis to conclude the car was stolen and that defendant's lie about his identity and failure to produce a license did not establish probable cause that a crime was underway. Ibid. In addition, the court noted that the offense--driving without a license--was complete when Lark failed to present his license on request. Ibid. The panel therefore found that there was no need to enter the car to look for a license or identification. Id. at 627, 726 A.2d 294.
*401 The panel noted that the police could "either detain the driver for further questioning" to satisfy themselves of "the driver's true identity, or arrest the driver for operating a vehicle without a license." Ibid. (citation omitted). But because "neither the Fourth Amendment nor our state constitution permits the warrantless entry of a vehicle to search for identification without probable cause," the officer could not enter the car "to look for identification." Ibid.
This Court affirmed the appellate decision substantially for the reasons in Judge Eichen's opinion and added several points. The Court noted that "[r]outine or simple motor vehicle offenses will usually warrant only the issuance of a summons," not a custodial arrest. 163 N.J. at 296, 748 A.2d 1103. If a driver has no license and offers false information, however, the police may have a sufficient basis to detain the driver for further questioning and, if that does not yield results, they "may take the driver into custody." Id. at 297, 748 A.2d 1103. But the police may not search a car "unless one of the existing exceptions to the warrant requirement" applies. Ibid.
After a lawful arrest, the Court continued, "the police may, under certain circumstances, impound the automobile and conduct an inventory search." Ibid. With "no reasonable basis to believe that the vehicle had been stolen," though, "there was no basis to impound the vehicle incident to the driver's arrest." Ibid.
**257 The force of that logic applies as well to a warrantless search of a car that has not been reported stolen, whose driver produced a valid license.
2.
The Court has revisited the dicta in Boykins twice since Lark.[1] The Court devoted one paragraph to the issue in Pena-Flores. That consolidated case involved two appeals. In the first, the police pulled over a driver, defendant Pena-Flores, for a traffic violation and smelled marijuana; the Court found probable cause and justified the search that followed under the automobile exception. 198 N.J. at 12, 30-31, 965 A.2d 114.
In the second case, a State Trooper pulled over another driver, defendant Fuller, for a traffic violation. Id. at 31, 965 A.2d 114. The driver handed over a license issued to Charles Bradley along with a bill of sale. Id. at 15, 965 A.2d 114. The photo on the license did not resemble Fuller, and "the license number was handwritten on the back." Ibid. After checking with dispatch, the trooper learned that the license plate and bill of sale did not match the car Fuller was driving. Id. at 16, 31, 965 A.2d 114. After the trooper arrested Fuller, he searched the car and found a loaded handgun and drugs. Id. at 16, 965 A.2d 114.
To be sure, at the time of the search, "the trooper already had probable cause to arrest the defendant for possession of a stolen **258 car, and, as in Pena-Flores, a justifiable basis to impound the car" after *402 which "the troopers could have secured a warrant." Id. at 46-47, 965 A.2d 114 (Albin, J., dissenting). Indeed, there was probable cause to believe that the car contained evidence of theft: genuine driving credentials that would identify the car's rightful owner.[2]
The majority, citing Boykins, upheld part of the search and observed that the trooper was "entitled, separate and apart from the automobile exception, to look into the areas in the vehicle in which evidence of ownership might be expected to be found." Id. at 31, 965 A.2d 114. For additional support, the Court cited United States v. Kelly, 267 F.Supp.2d 5, 14 (D.D.C. 2003).
In Kelly, officers responded to a traffic accident and found a seriously injured driver with foam coming out of his mouth and a glazed look in his eyes. 267 F.Supp.2d at 8. An officer entered the car to help remove the driver; while inside, the officer saw a gun box. Ibid. Once the driver was out of car, officers tried to speak with him to learn his identity, but he was incoherent. Ibid. They also found no identification in the driver's pockets. Ibid. At that point, two officers entered the car a second time to search "for a driver's license in the glove compartment" and "the gun that would presumably accompany the gun box." Ibid. They found neither. After an ambulance took the driver to the hospital, and a computer look-up disclosed no information about the car's ownership, an officer entered the car for a third time to look for the registration. Ibid. He found a bill of sale/registration in the glove compartment and a pistol near the center console. Id. at 8-9.
The district court upheld the third entry as a search for registration to establish ownership, and cited a decision of the **259 New Jersey Appellate Division. Id. at 13 (citing State v. Jones, 195 N.J. Super. 119, 478 A.2d 424 (App. Div. 1984) ).[3] Unlike Boykins and the appeal in this case, however, the police in Kelly responded to a medical emergency and sought to identify a seriously injured driver on his way to the hospital. The case is infused with concerns tied to exigency and law enforcement's community caretaking role; it is not a firm foundation for a driving credentials exception to the warrant requirement.
Both Pena-Flores and Kelly cited a portion of Professor LaFave's treatise that states, "[u]nder a variety of circumstances, it is reasonable for the police to make a limited search of a vehicle in an effort to determine ownership." 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.4(d) (4th ed. 2004) (cited in Pena-Flores, 198 N.J. at 31, 965 A.2d 114 ; Kelly, 267 F.Supp.2d at 13 ). As discussed further below, however, Professor LaFave does not endorse a broad-based exception to the warrant requirement to search for driving credentials when there is no probable cause. See 5 LaFave, § 10.8(a) n.33 (5th ed. 2012).
More recently, in Keaton, the Court declined to uphold a search based on Boykins. The State Police responded to the scene of an accident and saw an overturned *403 car. 222 N.J. at 443, 119 A.3d 906. Emergency medical technicians removed the injured driver from the car and treated him on the scene for cuts on his face. Ibid. Without first speaking to the driver, a trooper entered the car and conducted a warrantless search for registration and insurance documents. Id. at 444, 119 A.3d 906. He also found a handgun and drugs. Ibid.
The Court cited Boykins but invalidated the search because "the trooper was required to provide defendant with the opportunity to present his credentials before entering the vehicle."
**260 Id. at 442, 119 A.3d 906. In light of those facts, the Court had no reason to question the driving credentials doctrine.
As the above cases reveal, the Court has cited the dicta in Boykins on a number of occasions since 1967. For a doctrine of such seemingly long standing, however, the Court has hardly made it a practice to embrace warrantless searches for credentials when there was neither probable cause nor another settled basis to search. Cf. Lark, 319 N.J. Super. at 625, 726 A.2d 294.
C.
The Attorney General and Public Defender reference two notable decisions of the United States Supreme Court. Neither justifies a credentials exception to the warrant requirement. In fact, the United States Supreme Court has never recognized such an exception.
In New York v. Class, the police stopped a driver for speeding and a cracked windshield; the driver presented registration and insurance but no license. 475 U.S. 106, 108, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). The car's vehicle identification number (VIN) was obscured by papers on the dashboard and could not be seen from outside the car--in violation of federal regulations. Id. at 108, 111-12, 106 S.Ct. 960. The officer reached inside the car and moved the papers to reveal the VIN; in doing so, he came across a gun. Id. at 108, 106 S.Ct. 960. The Court upheld the search in light of the driver's diminished expectation of privacy in the VIN balanced against the governmental interest "served by obtaining the VIN." Id. at 113-14, 118-19, 106 S.Ct. 960. The balancing of interests is not the same in this case, as discussed in the following section.
A dozen years later in Knowles v. Iowa, the Supreme Court considered the search of a car stopped for speeding. 525 U.S. 113, 114, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). An officer issued a citation and then conducted a full search of the car. Ibid. The police found drugs under the driver's seat. Ibid.
**261 The Court held that the search violated the Fourth Amendment. Chief Justice Rehnquist, writing for a unanimous Court, explained that any safety concerns could have been addressed in less intrusive ways--for example, a patdown or protective frisk of the car, if supported by the requisite showing of danger. Id. at 117-18, 119 S.Ct. 484. And in language that resonates strongly in this case, the Court noted that there was no "need to discover and preserve evidence." Id. at 118, 119 S.Ct. 484. "Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the ... offender or in the ... car." Ibid.
Once again, Class and Knowles offer scant support for a driving credentials exception.
III.
To justify a credentials exception to the warrant requirement, the majority relies *404 on a general balancing test. It also highlights case law from other states. Both points warrant careful examination.
A.
The majority's test weighs "the driver's individual privacy rights against the government's legitimate interests in promoting highway and public safety." Ante at 242, 179 A.3d at 393. That concept stems from Camara v. Municipal Court of San Francisco, in which the Supreme Court assessed the appropriate standard under the Fourth Amendment for a municipal housing inspection of a private residence. 387 U.S. 523, 525, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In that context, the Court made two observations: (1) "it is obviously necessary first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen," id. at 534-35, 87 S.Ct. 1727 ; and (2) "there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails," id. at 536-37, 87 S.Ct. 1727.
**262 The Court later cited those concepts in Terry v. Ohio, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the seminal stop-and-frisk ruling, and Delaware v. Prouse, 440 U.S. 648, 654-57, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), which invalidated investigative stops of automobiles at traffic checkpoints, without probable cause or reasonable suspicion, to examine driver's licenses and registration documents. See also Class, 475 U.S. at 116-17, 106 S.Ct. 960.
In applying the test, the majority concludes that the government's interest in "officer safety in particular" outweighs "the minimal invasion of the driver's reasonable expectation of privacy." Ante at 242-43, 179 A.3d at 393. The majority also notes "that, for constitutional purposes, a brief and restricted search is no more intrusive than impounding the vehicle and conducting an inventory search later." Id. at 242-43, 179 A.3d at 393. As a result, the Court concludes that a driving credentials exception is reasonable if a driver is unwilling or unable to present documents about a vehicle's ownership after being given an opportunity to do so. Id. at 243, 179 A.3d at 393.
Pivotal to the majority's safety concern is that the officers had a reasonable suspicion that the SUV was stolen. See id. at 245-46, 179 A.3d at 394-95. The trial court, which heard the officer's testimony, never made such a finding. The majority reaches that conclusion on its own.
The facts reveal the following. At the time of the stop, the dispatcher relayed that the car had not been reported stolen. As the officer explained at the suppression hearing, had the SUV been reported stolen, the dispatcher would have said so. He did not. The most the officer could say was that he "didn't know if the car was stolen." He also testified that he sought access to the glove compartment for the insurance card and registration "[t]o issue a Title 39" traffic summons--but later admitted he did not need the items for that purpose.
Still, we are told that the SUV might have been stolen and not yet reported taken. That argument proves too much. It means that **263 anytime a driver produces a valid driver's license but not a registration card, the police can search for driving credentials because the vehicle might theoretically be stolen. More is needed to establish the government's interest in safety.
Next, the majority suggests that a search for driving documents is a "minimal invasion" of a driver's reasonable expectation of privacy. Id. at 242-43,179 A.3d at 393. In reality, the police spent ninety *405 seconds to search an empty glove compartment--along with other areas of the car that came into view. That type of intrusion is considerably more than minimal. Although the credentials search is supposed to be confined to areas where registration documents might normally be kept, see Keaton, 222 N.J. at 449, 119 A.3d 906, it is not a clinical, laser-like search. An examination of the glove compartment, center console, sun visor, and similar areas brings much of the car's interior into plain view and exposes it to law enforcement.
In addition, the majority believes that the search was not more intrusive than impounding the vehicle and conducting an inventory search afterward. See ante at 262, 268-70, 273, 179 A.3d at 404, 408-09, 411. The majority offers three bases to justify impounding the SUV: the Court's prior decisions in Hock and State v. Slockbower, 79 N.J. 1, 397 A.2d 1050 (1979) ; N.J.S.A. 39:3-4 ; and N.J.S.A. 39:5-47. The majority is mistaken on all of those counts.
First, the inventory search in Hock was based on probable cause to believe a car was stolen. After a lawful motor vehicle stop of a Cadillac, the driver gave the police an expired registration certificate that matched the license plates on the car; the registration, however, was for an Oldsmobile. Hock, 54 N.J. at 530, 257 A.2d 699. To the officer, "it appeared that the license plates on the car related to a different vehicle." Id. at 533, 257 A.2d 699. The police, therefore, had "reason to believe" that the car had been stolen. See id. at 534, 257 A.2d 699 (citing N.J.S.A. 39:5-47). And their "well-grounded suspicion that the car was stolen warranted arrest of its occupants." Id. at 533, 257 A.2d 699.
**264 In other words, the police in Hock conducted an inventory search, based on probable cause to believe a car was stolen, after they had arrested the driver and passenger and impounded the car. No one involved in this appeal, however, suggests there was probable cause to believe defendant Terry was driving a stolen SUV. Hock, therefore, simply does not justify impounding defendant's vehicle. Nor does Slockbower, in which this Court recounted what had occurred in Hock: "In State v. Hock, an impoundment and search were upheld on probable cause to believe the car was stolen." 79 N.J. at 6, 397 A.2d 1050 (citation omitted).
Second, N.J.S.A. 39:3-4 does not authorize officers to impound registered vehicles if a driver is unable to hand over the car's registration. Instead, the law empowers officers "to remove any unregistered vehicle from the public highway to a storage space or garage" at the owner's expense. N.J.S.A. 39:3-4 (emphasis added).
The SUV was registered. And the officers knew that at the time. Not only did a police dispatcher tell the officer on the scene that the SUV had been rented from Hertz at Newark Airport--which does not rent unregistered cars--but the dispatcher also relayed that "it came back that the car was registered to Hertz." Even without that affirmative proof, the failure to present a registration document during a car stop does not establish that a car is unregistered.
Third, N.J.S.A. 39:5-47 provides for the seizure of a vehicle when "the commission ... has reason to believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances." Unlike in Hock, there was no reason to believe the SUV was stolen. Once again, the officer testified simply that he "didn't know if the car was stolen." And the dispatcher had confirmed and relayed that the car was not reported stolen. N.J.S.A. 39:5-47, therefore, also does not support impounding the SUV.
*406 Using the majority's balancing approach, it was far more invasive to search the interior of defendant's SUV--without either **265 probable cause or a warrant--than to write up a summons for a traffic violation.
The Legislature has set forth an alternative, far more lenient approach to cases in which a driver fails to hand over a registration certificate. Under N.J.S.A. 39:3-29, a driver must present a license, insurance card, and registration certificate when an officer asks for them. If the driver of a car fails to do so, the police can issue a summons that may result in a fine of $150. The statute does not authorize impoundment. If the driver later shows up in court with the documents, the municipal court judge can dismiss the charges. N.J.S.A. 39:3-29.
In this case, defendant had the car rental agreement in his coat pocket and could have availed himself of the statute. But despite the leniency built into the law for this minor offense, the driving credentials exception allows officers to escalate the situation on the scene at the very earliest stage and conduct a warrantless search.
Missing from the majority's approach is any consideration of probable cause. To protect an individual's legitimate privacy interests, law enforcement officers are routinely required to demonstrate that there is probable cause to search a particular location. Both in our State and in the federal system, the search of a vehicle may not need a warrant, but a showing of probable cause is still required for good reason: to uphold a citizen's right of privacy.
In my view, the existence of probable cause to search for driving credentials could alter the overall balance and override a motorist's privacy interest when the police do not have a warrant. Just the same, the absence of probable cause also affects that balance and cautions against the invasion of privacy that cases like this entail.
B.
The majority highlights cases from other jurisdictions for support. Ante at 240-42, 179 A.3d at 391-93. A close look at the **266 limited number of state court decisions reveals a familiar pattern: Cases refer to a search for ownership documents, but the searches in question are also supported on another ground. The rulings, thus, undermine the independent legal force of the credentials doctrine. See, e.g., People v. Flores, 231 Ill.App.3d 813, 173 Ill.Dec. 325, 596 N.E.2d 1204, 1206, 1210 (1992) (search under car's hood to determine ownership conducted after driver gave consent and police arrested driver and impounded vehicle); People v. Braan, 80 A.D.2d 920, 437 N.Y.S.2d 388, 389-90 (1981) (search after officer saw gambling records inside car in plain view; conducted as "part of a proper investigation of a traffic violation and a gambling offense"); State v. Bright, 8 Or.App. 202, 493 P.2d 757, 757-58 (1972) (search of abandoned car with flat rear tire); Jordan v. Holland, 174 W.Va. 230, 324 S.E.2d 372, 375, 377-78 (1984) (search of car parked near bank that had just been robbed, with empty gun holster in plain view; probable cause existed to "believ[e] that the vehicle was involved in the robbery"; and "exigency created by the flight of felons" required swift search).
State v. Williams, 8 Kan.App.2d 14, 648 P.2d 1156 (1982), did not involve a search for driving credentials. In that case, a highway patrolman searched a truck cab for the commercial driver's daily log as part of a "spot check[ ] of pervasively regulated commercial businesses to insure compliance with regulations furnished to them by the state." Id. at 1157, 1162.
*407 State v. Byrd, 23 N.C.App. 718, 209 S.E.2d 516 (1974), discussed below, involved the application of New Jersey law.
California has a driving credentials exception. A divided California Supreme Court upheld warrantless searches for driver's licenses and registration in In re Arturo D., 27 Cal.4th 60, 115 Cal.Rptr.2d 581, 38 P.3d 433, 445-46 (2002). See also People v. Webster, 54 Cal.3d 411, 285 Cal.Rptr. 31, 814 P.2d 1273, 1281-82 (1991) ; People v. Martin, 23 Cal.App.3d 444, 100 Cal.Rptr. 272, 273 (1972).
Several states reject a driving credentials exception to the warrant requirement. See **267 State v. Branham, 191 Ariz. 94, 952 P.2d 332, 333 (Ariz. Ct. App. 1997) (holding that, in the absence of probable cause, police officer making legitimate traffic stop may not "conduct a limited search for the vehicle registration card based solely on the driver's failure to produce it"); State v. Bauder, 181 Vt. 392, 924 A.2d 38, 51 n.8 (2007) (rejecting the view that a driver's failure to produce ownership documents can "establish a reasonable suspicion that the vehicle is stolen and thereby establish the basis for a limited search of the vehicle ... where such documents are normally stored"); see also Commonwealth v. Silva, 61 Mass.App.Ct. 28, 807 N.E.2d 170, 173 (2004) ("We are not aware of any legal precedent ... that would hold constitutionally supportable ... a police policy for automobile entries and searches to gather ownership documents precedent to towing of a car ....").
The majority also cites three federal cases for support. Once again, the decisions involve issues in addition to the driving credentials theory. In United States v. Brown, 470 F.2d 1120, 1121-22 (9th Cir. 1972), the driver illegally possessed chemical mace in his jacket pocket. Kelly, 267 F.Supp.2d 5, discussed above, also involved a medical emergency and community caretaking concerns. And the district court in United States v. Lopez, 474 F.Supp. 943, 948 (C.D. Cal. 1979), suppressed an illegal search noting that "[e]ven if the officer's entry to inspect the registration was justified," other aspects of the search were plainly unconstitutional. The court relied on California state case law as support for a limited registration search. Ibid.
The above cases do not reflect a widespread trend for the driving credentials exception for a more fundamental reason. As Professor LaFave explains, referring to Brown and Byrd,
[t]hese decisions are in error. Search of the car should be permitted only when the failure to produce the registration and the other relevant circumstances establish probable cause that the car is stolen. Absent such evidence, further detention for investigation would be justified if the Terry reasonable suspicion test was met.
[5 LaFave, § 10.8(a) n.33 (5th ed.).]
Both Brown and Byrd turn on facts that are similar to what happened here. In Brown, the police stopped a car for an illegal **268 left-hand turn. 470 F.2d at 1121. The driver "shrugged his shoulders" when asked about the vehicle's registration. Id. at 1122. An officer then set out to conduct a limited search above the visor and around the steering column for the car's registration--and saw a sawed-off shotgun on the floorboard. Ibid.
Byrd is a 1974 North Carolina case that involved a stop on the New Jersey Turnpike. 209 S.E.2d at 517. A State Trooper stopped a car for a license and registration check. Ibid. After the driver "failed to produce a registration certificate," "the officer searched the glove compartment." Ibid. He found a pistol. Ibid. A later inventory search turned up stolen jewelry. Ibid.
The defendant was tried and convicted in North Carolina. Ibid. On appeal, a *408 North Carolina appellate panel relied on Boykins and Gammon, as well as a third decision from North Carolina, to uphold the warrantless search. Ibid.
To be clear, Professor LaFave criticized Byrd, which relied on New Jersey's Boykins decision--the foundation for the credentials theory. According to the eminent treatise, the warrantless search for registration documents should not have been upheld without probable cause to believe that the car was stolen. 5 LaFave, § 10.8(a) n.33 (5th ed.).
C.
In addition to questions about the driving credentials doctrine's legal foundation, its scope is unclear and potentially quite broad. The basic principle in question, restated succinctly in Keaton, is that after the police provide a driver an "opportunity to present his credentials," an officer may conduct a limited search of the vehicle if the driver "is unable or unwilling to produce his registration or insurance information." 222 N.J. at 442-43, 119 A.3d 906.
If an anxious driver fumbles while searching for her registration during a stop, can an officer conduct a search because she was "unable" to produce the document? Suppose she fails to come up with the requested documents for two minutes--more than the **269 amount of time that elapsed in this case. Can an officer order her out of her car and search the vehicle under the credentials exception? We do not know. But countless drivers who commit some type of traffic offense and are pulled over, see Carty, 170 N.J. at 640-41, 790 A.2d 903, may be subjected to a warrantless search for credentials. That is especially troubling today, when officers can instantaneously verify relevant information about a vehicle's ownership and registration without a hard copy of a registration document--something that was not possible in 1967, when Boykins was decided.
IV.
The dicta in Boykins, of course, dealt with the ability of officers to retrieve the hard copy of a vehicle's registration and an insurance card. Yet technology has dramatically changed the nature of motor vehicle stops since that decision.
Officers in the field today have access to much more information than they did in 1967. Dispatchers can now search advanced computer databases and gather information instantaneously. In this case, for example, dispatch confirmed within seconds that the SUV was a rental from Hertz, that it had not been reported stolen, that defendant's driver's license was valid, and that he had no outstanding warrants.
Beyond that, for more than twenty years, police vehicles have been equipped with mobile data terminals (MDTs) that also have access to a wealth of information. The Court in State v. Donis described what was available in 1998 to an officer in the field:
[A] mobile data terminal (MDT) consists of a screen and keypad that are linked to the computerized databases of the New Jersey Division of Motor Vehicles .... Information may be retrieved through the MDT by entering a license plate number.
When an officer enters a vehicle's license plate number, the initial "DMV plate" screen shows the expiration date of the registration for that vehicle; the status of the vehicle, including whether it has been reported stolen; the registrant's name, address, date of birth, and driver's license number; the year, make, model, license plate number, and color of the vehicle; the vehicle identification number; the number of owners of the *409 registered vehicle; the maximum number of passengers **270 for a passenger vehicle; the gross weight for a commercial vehicle; and the length of the registered vehicle if it is a boat.
When an officer accesses a DMV plate screen, the MDT then automatically runs a search of the registrant's name and displays the results on the "DMV name" screen. The DMV name screen shows the registrant's name and the number of names that match that search name; the registrant's driver's license number and date of birth; a code for the registrant's eye color; a code for whether the license or registration is suspended; whether the license is a photo or non-photo license; the licensee's address, social security number, date of birth, weight, and height; the term of the license; the license expiration date; the number of points accrued against the license; and the number of endorsements and restrictions on the license.
....
In addition to using the license plate number, an officer can also enter the vehicle identification number to determine whether state or federal records indicate that the car has been reported stolen. By entering the licensee's name, an officer can further learn whether that individual is wanted by state or federal authorities.
[ 157 N.J. 44, 46-47, 723 A.2d 35 (1998).]
No doubt, there have been advances since 1998, which are not contained in the record.
The State has not identified anything in the physical registration document that is not revealed by the MDT. There is a simple way to assess that question. Look at a hard copy of a vehicle registration and see what it discloses: the license plate number and vehicle identification number (both of which are visible from the exterior of the car and trigger the information listed above); the expiration date of the registration; the year, make, model, and color of the vehicle; the maximum number of passengers; the registered driver's name and address; and the fee paid.
What precisely is needed from a hard copy of the registration that officers cannot learn from the MDT? Thanks to developments in technology, the answer is less clear today than it was in 1967. It is even less clear why a warrant exception for driving credentials is needed, when the same information can be obtained without compromising constitutional rights.
In a nod to technology, the majority adds a limiting principle: that a warrantless search for credentials cannot be justified when "the officer can readily determine that either" the driver or passenger "is the lawful possessor." Ante at 243, 179 A.3d at 393.
**271 Because officers on duty nearly always have access to MDTs or a dispatcher, that principle should logically mean that few warrantless searches for credentials could ever be justified.
V.
What is particularly troubling in this case is not defendant's failure to hand over a registration document or insurance card; it is his behavior beforehand. He did not stop when a police car pulled behind him with its emergency lights and siren on, and drove on for a half mile, changing lanes without signaling. Defendant's conduct showed disrespect for the police and posed a danger to the officer and other drivers on the road.
The officers, in turn, had a number of options. They could and did order defendant out of the car to frisk him. Defendant was unarmed. At that point, the officers were in full control of the scene. They might have tried to defuse the situation *410 and question the driver further, as officers routinely and capably do.
The police could have also charged defendant with eluding and arrested him. See N.J.S.A. 2C:29-2(b) ("Any person, while operating a motor vehicle on any street or highway in this State ... who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle ... to a full stop commits a crime ...."). To the extent the officers had a continuing concern for their safety, as the State argues, they could have taken defendant into custody rather than allow him to reenter the car on his own.
The police could have then impounded defendant's car and conducted an inventory search.[4] See South Dakota v. Opperman, 428 U.S. 364, 369-72, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). That **272 would have been more of an imposition on defendant Terry, of course. But is it preferable, instead, to curtail the protections of the warrant requirement when there is no probable cause either to arrest the driver or to believe that evidence of a crime can be found in his car?
The troubling facts of this case should not propel a legal standard--an exception to the warrant requirement--that will apply to more routine traffic stops as well. What may seem reasonable on a superficial level in this case may not appear that way in the next. In the case of a more minor traffic violation, like driving a few miles over the speed limit, if a driver produces a valid license but no registration, and the car is not reported stolen, the motorist can be issued a summons and allowed to leave. From both a legal and practical perspective, a credentials search is not warranted. The offense is complete, and no additional search for documents is necessary or appropriate. See Lark, 319 N.J. Super. at 626-27, 726 A.2d 294.
To be clear, this is not a critique of the officers, who tried to apply the law as they understood it. It is a critique of a theory that permits law enforcement to search a vehicle without probable cause, when officer safety is not an issue, and when there is no legitimate law enforcement need for the credentials sought.
To the extent vehicles pose special concerns, the law already has an automobile exception to address them. We do not need a milder version of the automobile exception and the protective sweep doctrine for cases in which there is no probable cause to search and no specific and articulable safety concerns that would satisfy Long and Lund.
VI.
The United States Supreme Court has never recognized a driving credentials exception to the warrant requirement. As the majority correctly notes, this Court can address, in the first instance, a federal question that the nation's highest court has not decided. See **273 Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542 (1884). But in light of New Jersey's long and proud tradition of guaranteeing stronger protections for civil liberties than the Federal Constitution provides, it is unusual for the Court to cut back on privacy rights in a way that federal law does not explicitly require.
Nearly a quarter century ago, this Court criticized "judicially-created" exceptions to the warrant requirement that sidestep the need to show probable cause. The Court's words bear repeating:
*411 Because probable cause "is the constitutionally-imposed standard for determining whether a search and seizure is lawful" and "occupies a position of indisputable significance in search and seizure law," vehicle searches sustainable under the "automobile exception" and based on probable cause stand on firmer ground than those that depend for their validity on a judicially-created exception to the warrant requirement, such as the Belton rule, which requires no proof of probable cause.
[ State v. Pierce, 136 N.J. 184, 214, 642 A.2d 947 (1994) (citation omitted) (adopting stricter standard for warrantless automobile searches incident to arrest than federal standard set forth in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) ).]
Those thoughts ring true today as well.
The Federal and State Constitutions favor searches conducted with a warrant. Exceptions to that requirement should be "jealously and carefully drawn." Jones, 357 U.S. at 499, 78 S.Ct. 1253. I would not weaken those core constitutional principles and the rights they protect. I therefore respectfully dissent.

Years before Lark, the Court briefly referred to the Boykins dicta in Hock, 54 N.J. at 533, 257 A.2d 699. Hock, though, is not directly on point; it involved an inventory search of an impounded car. Id. at 530-31, 257 A.2d 699. The majority also cites State v. Patino, 83 N.J. 1, 12, 414 A.2d 1327 (1980), as support for a credentials exception. In that case, the Court rejected the warrantless search of the trunk of a car incident to the arrest of the driver and a passenger; the Court made only passing reference to searches for identification. Id. at 4, 7, 12, 414 A.2d 1327. The Court did not write an opinion in State v. Gammons, 113 N.J. Super. 434, 437-38, 274 A.2d 69 (App. Div.), aff'd o.b., 59 N.J. 451, 283 A.2d 897 (1971), which involved questionable analysis: a documents search of a car conducted after the defendant could not produce a registration certificate--from the hospital.

At the time, the automobile exception required a showing of exigency as well. Pena-Flores, 198 N.J. at 20-22, 965 A.2d 114. Today, under Witt, the search would have been constitutional under the automobile exception because of the unforeseeable and spontaneous circumstances that gave rise to probable cause. Witt, 223 N.J. at 450, 126 A.3d 850 ; see also Pena-Flores, 198 N.J. at 48, 965 A.2d 114 (Albin, J., dissenting).

Jones repeated the dicta in Boykins but refused to uphold a warrantless car search because the police did not afford the driver a "reasonable opportunity ... to retrieve [his] registration and insurance card." 195 N.J. Super. at 123, 478 A.2d 424.

By contrast, as noted earlier, "[r]outine or simple motor vehicle offenses will usually warrant only the issuance of a summons." Lark, 163 N.J. at 296, 748 A.2d 1103. The majority overlooks that distinction. See ante at 247, 179 A.3d at 395-96. Impoundment would only have been possible in this case if defendant had been arrested for eluding.